PEOPLE ex rel. RAE v. YORK et al.

(Supreme Court, Appellate Division, Second Department.   June 28, 1898.)

1. TRUSTEES BROOKLYN BRIDGE—POWERS.
      The trustees of the Brooklyn Bridge had no authority to appoint a
      police surgeon as a member of the force under their charge.

2. SAME—EMPLOYMENT OF POLICE SURGEON.
      Even if this were otherwise, their mere employment of a physician to
      attend the bridge policemen, at a stipulated fee for each visit, would not
      render him "attached to the police force," under the Greater New York
      charter (section 278), the purpose of which was to transfer to the force
      of the consolidated city such persons as were officially related, by virtue
      of their office, to the police force transferred.

Appeal from special term, Kings county.

Application by the people, on the relation of Alexander Rae, for
writ of mandamus against Bernard J. York and others, constituting
the board of police of the city of New York.   From an order denying
the writ, plaintiff appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

James C. Bergen, for appellant.
Almet F. Jenks (R. P. Chittenden, on the brief), for respondents.

HATCH, J.   The relator sought this writ for the purpose of com-
pelling the board of police of the city of New York to recognize him
as a police surgeon attached to the police force of such city, and to
permit him to continue in the discharge of his duties in connection
therewith.   The basis of the claim to this office upon the part of the
relator rests upon certain acts of the board of trustees of the New
New York and Brooklyn Bridge, by which it is claimed he was ap-
pointed to the office of police surgeon of the police force attached
to said bridge.   The determination of relator's rights in the prem-
ises rests upon the construction to be given an act of the legislature
governing the management and control of the New York and Brook-
lyn Bridge, and the several acts amendatory thereof.   By section 8,
c. 300, Laws 1875, concurrent jurisdiction was declared to be pos-
sessed by the respective courts of the city and county of New York
and of the city of Brooklyn and the county of Kings, by the judicial
and administrative officers of said cities and counties, respectively,
over all crimes and offenses committed upon the said bridge.   Pursu-
ant to this section, it was made the duty of the trustees of the bridge,
and they were authorized, to appoint "an adequate police force, and
to regulate and direct the same for the protection of the said bridge
and of the travel over the same, and of all persons, vehicles, railroad
cars and animals using or passing over the same; and the police-
men so appointed shall have and possess all the powers of policemen
of the cities of New York and Brooklyn.   The compensation of the
said policemen shall be fixed by the said trustees, and shall be a
charge against such bridge and paid by said trustees."   This act
was several times amended, but, so far as the power to appoint
policemen for said bridge is concerned, it was not substantially

changed. Chapter 710, Laws 1894, amended section 8 by the addition of a clause authorizing the board of trustees, for the government and discipline of the police force, to make from time to time rules, regulations, and orders; and further provided: "And the compensation of the said policemen shall be the same as now paid (or may hereafter be paid) to the policemen of the city of Brooklyn, and shall be a charge against said bridge and paid by said trustees monthly." At this time it was provided by section 7, tit. 11, c. 583, Laws 1888, as amended by section 2, c. 695, Laws 1893, inter alia, that the commissioners of police and excise should appoint not to exceed five "surgeons who, except that they shall not be liable to patrol duty, shall be subject to all the rules of the department and possess the same rights and privileges as other members of the force." It is upon this authority, and action of the trustees thereunder, that the relator claims he was appointed to the office of police surgeon, and that by virtue of section 278 of the Greater New York charter he has been transferred to the police force of the city of New York.

It is to be observed that the act nowhere in terms confers authority upon the board of trustees to appoint a police surgeon. Indeed, the duties to be performed by the persons appointed as the police force for said bridge do not seem to embrace any of the duties which are devolved upon physicians or surgeons. The authority to appoint a police force is for the protection of the bridge, and the travel over the same, and also for regulating and protecting all persons, vehicles, railroad cars, and animals using or passing over the same; and such persons so appointed are invested with all the powers of policemen of the cities of New York and Brooklyn. There is certainly nothing either in the name of the men who are to be appointed, or in the duties which they are to perform, which, by any reasonable construction, could be extended to embrace the duties devolved upon a surgeon to the police. In the charters of the cities of New York and Brooklyn, prior to the passage of the Greater New York charter, provision was made for the appointment of policemen for the performance of similar duties as were devolved upon the policemen authorized to be appointed by the board of trustees of the bridge, the only difference being the locality where such power is exercised. But it was not the claim, nor could the claim well be made, that such provisions of the charters of these cities would have authorized the appointment of police surgeons under the authority granted to appoint policemen. On the contrary, in the respective charters of these cities, and, indeed, under the charters of all other cities, so far as our examination has extended, express and specific authority was conferred by the legislature to appoint police surgeons. Thus, in the charter of the city of Brooklyn, authority was granted to appoint not to exceed five surgeons, and their salaries were fixed by the same statute. By virtue of such authority contained in the statute, and of the exercise of authority by the appointing power, such surgeons became officers of the city. Collins v. Mayor, etc., 3 Hun, 680; People v. Board of Police, 75 N. Y. 38. So that the power which has been exercised for the appointment of police surgeons has uniformly been found to have been conferred by express enactment, without

which we are quite clear the power would not exist. Nor do we think that anything contained in the amendment of 1894 changed this rule. In no just sense do we think it can be claimed that regulation of a police force by virtue of which medical attendance is provided is in any sense to be regarded as a part of the compensation paid to such force. It is evident that it is not an essential requirement that medical attendance should be furnished to policemen. The city may do it, or it may constitute a force without it. Indeed, the real benefit sought to be derived by the appointment of police surgeons looks quite as strongly to the general morale of the force, and to maintaining its efficiency for the benefit of the public, as to having its purpose regarded as being for the benefit of individual policemen. But, however this may be, considerations of mere benefit to the individual, as distinguished from the general good of the community, measured by the word "compensation," cannot be construed to be so far for his benefit as to give him a vested right therein, and compel the appointment of a police surgeon to attend upon him, in the absence of any provision authorizing such appointment. To construe such language as having that effect would confer upon the policemen the right to have the authority exercised, and, if the power existed and the persons vested therewith refused to exercise it, the right would exist in the policemen to compel its exercise, for the reason that he would be as much entitled to compensation in this regard as in any other. It is evident that authority, either express or by necessary implication, must exist to work such a result. We therefore conclude that no power was conferred by the provisions of the act or of its amendments authorizing the board of trustees of the New York and Brooklyn Bridge to appoint a police surgeon for its police force. If, however, it were otherwise, we do not think that such power has been exercised. The affidavit in opposition to the motion, which upon this application must be taken to be true (People v. City of Brooklyn, 149 N. Y. 215, 43 N. E. 554), states that one Dr. Lewis became connected with the bridge as surgeon to its police force, and for other purposes, including the investigation of persons claiming to have been injured upon the bridge, but that he received no salary from the bridge trustees, and was paid three dollars for each visit. He continued so to act until June 11, 1894, when a resolution was adopted in these words: "Resolved, that Dr. E. A. Lewis be, and he is hereby, appointed surgeon, and Dr. Alexander Rae assistant surgeon, to the police force of the New York and Brooklyn Bridge, at the same compensation as heretofore." So far as this resolution is concerned, it did not operate to change either the relation of Dr. Lewis or of the relator to the New York and Brooklyn Bridge. The employment was the same as had theretofore existed. He had never been appointed to any office. No oath was required of him, and he took none; and the character of his duties, and the method of compensation, clearly show that he was in no sense an official holding a public office. His services could be dispensed with at any time, and his employment was like that of any other professional man, to render service as the employer might demand or find necessary. The subsequent resolution adopted by the board, ap-

pointing the relator, upon the resignation of Dr. Lewis, to his place, adds nothing to the force of the prior action of the board.

So that it does not appear from this record that either Dr. Lewis or the relator ever held the office of police surgeon to the New York and Brooklyn Bridge police force, but, on the contrary, their relation was not changed from what it had been since the opening of the bridge, and consisted, during the whole period, in the relation of employer and employé, with compensation measured at a given sum for each visit. The resolutions, although using the words "police surgeon," did not have the effect of creating such an office or of appointing the relator to it. They amounted to no more than a continuation of the former employment, upon the same terms, and created no other or different obligation or relation than was created by the previous employment or arrangement which had been made. Consequently, in whichever aspect we view this case, it is clear that the relation of police surgeon to the New York and Brooklyn Bridge police force never existed, either by authority of any law or by virtue of any legal appointment, if such authority had existed. The words "attached to the police force," etc., as used in section 278 of the Greater New York charter, cannot have the force of creating an office where one had never existed prior thereto. Mere connection with such force was not contemplated by the language of this section as creating a public office. Its evident purpose was to transfer such persons, and such persons only, so far as the relator is concerned, as were officially related, by virtue of their office, to the police force transferred. It follows that the order was right, and should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.