THE PEOPLE OF THE STATE OF NEW YORK ex rel. PATRICK H. CORRIGAN, Respondent, *v.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF BROOKLYN, Appellants.

1. MOTION FOR PEREMPTORY MANDAMUS — EFFECT OF CONFLICTING AFFIDAVITS. Where, upon motion for a mandamus, opposing affidavits are read which are in conflict with the averments in the affidavits of the relator, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and the question as to the right to the writ must be determined upon the assumption that the averments of the opposing affidavits are true.

2. MOTION FOR PEREMPTORY MANDAMUS — STATUS OF RELATOR'S AFFIDAVIT. Upon a contested motion for a peremptory mandamus, the only allegations contained in the relator's affidavit which are to be taken as true are the allegations of fact that are undisputed, and any allegation contained therein which is a mere conclusion of law should not be considered.

3. CITY OF BROOKLYN — TENURE OF OFFICE OF APPOINTIVE SALARIED EMPLOYEES — VETERANS. By force of the statutes on the subject (Chaps.

80, 583, Laws of 1888; chap. 577, Laws of 1892; chap. 716, Laws of 1894), the authorities of the city of Brooklyn have no right to remove an honorably discharged Union soldier of the late war from an appointive salaried position, such as that of keeper or superintendent of the Truant Home, except for good cause shown on hearing had; but if such a position is abolished in good faith and for sufficient reason, as, *e. g.*, on the ground of economy, this statutory limitation has no application,

4. REMOVAL OF MUNICIPAL SALARIED EMPLOYEE — APPLICATION FOR MANDAMUS FOR REINSTATEMENT — AFFIDAVITS.   Where, upon an application for a peremptory mandamus to compel municipal authorities to reinstate, in an appointive salaried position, a relator whose removal was not justifiable, unless his position had been abolished in good faith, on grounds of economy, the relator claims and alleges in his affidavit that his position had not been so abolished, but that the duties theretofore performed by him had been assigned to and were being performed by a new appointee, under a different official title, and these allegations are denied by the opposing affidavits, containing allegations that the duties of the relator were in effect transferred to a previously appointed and acting employee, and an examination of the conflicting affidavits shows that every essential allegation contained in the relator's affidavit is denied, so far as it relates to the nature and character of the work performed by him and that performed by the new appointee, a peremptory writ of mandamus is improper, but an alternative writ should issue for a trial of the issues raised.

5. REMOVAL OF MUNICIPAL SALARIED EMPLOYEE — MANDAMUS FOR REINSTATEMENT.   When a relator, seeking reinstatement, by mandamus, to a municipal appointive salaried position from which he had been removed, has made no suggestion to the appointing authorities of his willingness to perform different duties which had been assigned to the person claimed by him to have been wrongfully appointed in his place, under a different official title, and makes no claim for appointment under such different title, a writ of mandamus directing the authorities to assign the relator to the duties performed by the new appointee, and to permit the relator to collect the salary attached to such new appointee's official position, is improper.

*People ex rel.* v. *Mayor, etc., Brooklyn,* 91 Hun, 368, reversed.

(Argued April 6, 1896; decided April 14, 1896.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 2, 1895, which affirmed an order of Special Term granting a peremptory writ of mandamus, and also affirmed an order denying a motion for a re-argument.

On June 11, 1895, an order to show cause why a peremptory manuamus should not issue against the appellants was granted and made returnable on the 15th day of that month. The motion was based on an affidavit made by the relator. It was argued June 21st, and on July second an order was entered which, so far as material, is as follows: "It is ordered, that the said motion be, and the same is hereby granted, with ten dollars costs, to be paid by the said mayor and common council of the city of Brooklyn, to said Patrick H. Corrigan. And it is further ordered, that a peremptory writ of mandamus, containing appropriate recitals, issue out of and under the seal of this court, commanding the said mayor and common council of the city of Brooklyn forthwith to restore and reinstate the said Patrick H. Corrigan to and in the position held and occupied by said Corrigan previous to the 9th day of May, 1895, namely, the position of Keeper of the Truant Home, and to permit, cause and allow the said Patrick H. Corrigan to perform the work, duty and service connected with such position, and to assign the said Corrigan to such duty, and also to permit, cause and allow the said Corrigan to receive and collect the salary, emolument and compensation now attached to said position and provided as compensation for the services rendered by the incumbent thereof to the city of Brooklyn."

A motion for a re-argument was subsequently made, and was based upon affidavits showing that one of the affidavits used by the appellants contained an error, which, as appeared from the opinion of the judge at Special Term, was considered important as bearing upon the question before him. Upon such re-argument the court held that the error was immaterial, and denied the motion, but re-settled the order, which was re-entered August 13, 1895, and which so far as important was as follows: "It is ordered that the said motion for a re-argument of the original motion made herein by the relator, be and the same hereby is denied, and the stay of all proceedings herein which was ordered by the said order to show cause, dated July 8th, 1895, be and the same hereby is

vacated, set aside and annulled.   And it is further ordered, that the order heretofore and on the 21st day of June, 1895, granted herein, be modified and amended by striking out the whole of the last paragraph thereof, and inserting in place the following: And it is further ordered that a peremptory writ of mandamus containing appropriate recitals issue out of and under the seal of this court, commanding the said mayor and common council of the city of Brooklyn forthwith to restore and reinstate the said Patrick H. Corrigan to and in the position held and occupied by said Corrigan previous to the 9th day of May, 1895, namely, the position of Keeper of the Truant Home, and to permit, cause and allow the said Patrick H. Corrigan to perform the work, duty and services which, under the resolution of the common council of the city of Brooklyn, adopted April 29, 1895, and approved by the mayor May 9, 1895, are devolved upon one John Eiseman, as janitor, and to assign the said Corrigan to such duty, and also to permit, cause and allow the said Corrigan to receive and collect the salary, emolument and compensation fixed by the said resolution for the performance of the said work, and provided as compensation for the rendering of such services to the city of Brooklyn." It was further ordered that the peremptory writ of mandamus which had been granted be modified by striking out all the commands thereof and inserting in place thereof a command which was substantially identical with the provisions of the order as amended.

In the affidavit of the relator, upon which the order to show cause was granted and the original and amended writ of mandamus were issued, it was stated that the relator was appointed as keeper of the Truant Home of the city of Brooklyn on March 29, 1886, and that the position was afterwards known by the parties as superintendent of the Truant Home.   The relator retained the place until May, 1895, when he was removed by the common council.   The resolution removing him was adopted April 29, 1895, and so far as material was as follows: "Resolved, That the positions of

Superintendent and Farmer at the Truant Home be and the same hereby are abolished from and after the first day of May, eighteen hundred and ninety-five, for economical reasons, and that the incumbents of the said several positions be from and after said date dismissed for the same reasons. Resolved, That the duties heretofore performed by the Superintendent at the Truant Home be from and after the first day of May, eighteen hundred and ninety-five, devolved upon Eugene Martyn, a teacher of said Home. Resolved, That the services of James Towey and Daniel Ferrity, laborers at said Home, be dispensed with from and after the first day of May, eighteen hundred and ninety-five. Resolved, That John Eiseman be and he hereby is appointed Janitor of the Truant Home, and that he receive for his service as such Janitor the sum of four dollars per day, and that he have authority to appoint such laborers as may be necessary, subject, however, to the approval of this Common Council or its successors in authority."

The relator was a soldier in the Union army from August 23, 1862, to June 30, 1865, and was honorably discharged. He was also a volunteer fireman of the city of Brooklyn, and was such at the time of the disbandment of the volunteer fire department of that city. He had been examined by the civil service commissioners of the city of Brooklyn and received a proper certificate. It is stated in his affidavit: "I continued to occupy the said position of the keeper of the said Truant Home up to and including the ninth of May, 1895; on that day I was removed, as hereinafter set forth, and one John Eiseman was appointed by the common council of the city in my place, and is now performing some of the same duties as I performed, and he did not pass a competitive or any other examination prior to his appointment." The duties performed by the relator as such superintendent were stated in his affidavit as follows: "It was my duty to make requisition for supplies for said Home, and these were furnished through the Department of City Works under contracts made by that department. I received all supplies and

certified to that department the correctness of all bills for the same; I also certified to the monthly pay roll of the institution, which contained the names of the employees of the Home and the sums due each for their work. There was a teacher in said Home named Eugene Martyn, and an assistant teacher; these two teachers were appointed by the common council of the city of Brooklyn; the other employees of said Home are enumerated in a schedule hereto annexed and marked ' A,' and these latter were employed by me, under the direction of the committee of the common council having the matter of the Home in charge. I directed and superintended the labors of all employees, except the teacher and assistant teacher, and even these latter reported to me at their coming and going; I was in general charge and custody of the Home and its inmates, and as a matter of habit and practice I came to be called the superintendent and was named as such in the pay roll of the Home and in all official papers relating to it; but my appointment read as keeper, and this was never officially changed; my duties were of the same general nature from the day of my first incumbency and never changed until my discharge." It was also stated in the relator's affidavit that since his departure from the institution John Eiseman had entered the Home and performed that part of his duties which consisted in the general charge of the inmates and employees of said Home, which was by far the greatest part of such duties, while Eugene Martyn, a teacher, had done that part which consisted of making requisitions for supplies, receipting for the same and certifying the bills and pay roll.

The affidavits read in opposition to the motion were to the effect that Eugene Martyn, who was a teacher, had been in the employ of the Home since December 1, 1868, and was familiar with all the matters pertaining to the same, both before the appointment of the relator and after his appointment, and until his discharge; that the statement in the affidavit of the relator that on the 9th of May, 1895, John Eiseman was appointed by the common council in the place of the relator, and is now performing the duties formerly performed

by him was untrue; also that during the superintendency of the relator the duties that would naturally devolve upon a janitor were rarely, if ever, performed by the relator; that that work was done under his direction, but by laborers or boys in the institution; that the only work the superintendent did during his superintendency was the making of requisitions for supplies, certifying to the monthly pay rolls of the institution and the hiring of domestic servants; that after the discharge of the relator, pursuant to the resolution of the common council, those duties devolved upon Eugene Martyn, and have ever since been performed by him.

The affidavits read in opposition to the motion also stated in substance that by the discharge of the persons mentioned in the resolution discharging the relator, the institution saved an expense of at least $940 a year. It also appeared that his discharge was induced by an investigation by the common council of the affairs of the Home, which resulted in a determination by them that its affairs were not economically administered, and that its expenses were too great; that the superintendent was receiving a salary of $1,800 per year, and that the duties performed by him could be performed by Martyn; that the position of superintendent or keeper was unnecessary and should be abolished, and also the position held by the farmer, who received $600 a year; and that Martyn, who was then employed as a teacher in the institution, should discharge the duties formerly performed by the relator as such superintendent.

From the order of the Special Term granting the writ of peremptory mandamus the appellants appealed to the General Term of the Second Department, where the order was affirmed, and from that order this appeal was taken.

*Joseph A. Burr* for appellants. When, upon a motion for a mandamus, opposing affidavits are read which conflict with the averments in the moving papers, if, notwithstanding this, the relator insists upon his peremptory writ, it is equivalent to a demurrer to the answering affidavits, and the question as

to his right to the writ must be determined upon the assumption that the opposing affidavits are true. (*People ex rel.* v. *Cromwell*, 102 N. Y. 477; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95; *People ex rel.* v. *Brush*, 146 N. Y. 60.)   If any allegations contained in the petition are taken to be true, it must be only those allegations of fact which are undisputed, and any allegation which is a mere conclusion of law, though contained in the petition and although not in express terms denied in the affidavits, cannot be considered. (*Sprague* v. *Parsons*, 11 Civ. Pro. Rep. 18; *Knapp* v. *City of Brooklyn*, 97 N. Y. 523.)   In determining the force and effect to be given to the answering affidavits, the court has no power to treat any of the allegations therein contained as false or a sham. (*People ex rel.* v. *S. L. & S. F. R. Co.*, 47 Hun, 544.)   The common council, having the power to appoint, had also power to remove the relator from the position which he occupied, except so far as it might be restrained by statute, and the only statutes applicable to this situation which impose any such restraint are the so-called Veteran Acts. (Throop on Public Officers, 304; *People ex rel.* v. *Fire Commissioners*, 73 N. Y. 437; *People ex rel.* v. *Robb*, 126 N. Y. 180.)   The limitations prescribed by these acts do not prevent the abolition of a position upon economical grounds, and the devolution of the duties appertaining to such position upon another person then in the employ of the appointing power. (*People ex rel.* v. *Gilroy*, 60 Hun, 509; *People ex rel.* v. *Adams*, 22 N. Y. S. R. 856; *Phillips* v. *Mayor, etc.*, 88 N. Y. 245; *Lethbridge* v. *Mayor, etc.*, 133 N. Y. 237.) The writ should have been directed to the individual members of the common council and not to the common council itself. (*People ex rel.* v. *Civil Service Comrs.*, 17 Abb. [N. C.] 76.)

*James C. Cropsey* for respondent.   The appeal should be dismissed. (Laws of 1895, chap. 687.)   The relator's removal without a hearing given him or cause shown was illegal. (Laws of 1888, chap. 80; Laws of 1888, chap. 583, § 29;

Laws of 1892, chap. 577; Laws of 1894, chap. 716.) The appellants' claim that relator was removed for economical reasons does not, upon the facts of this case, justify their act in doing so   (*People ex rel. v. Fire Comrs.,* 72 N. Y. 445.) The man appointed janitor, upon relator's removal, performs, at least, a part of relator's duties, and so there has not been an honest and substantial abolition of his position. (*People ex rel. v. Porter,* N. Y. Law Jour., Aug. 14, 1895.) This proceeding is properly brought against the mayor and common council of the city of Brooklyn as such. (*People ex rel. v. Common Council of Brooklyn,* 77 N. Y. 503 ; *People ex rel. v. Board Suprs. Niagara Co.,* 49 Hun, 32 ; *People ex rel. v. Board Suprs. Fulton Co.,* 53 Hun, 254 ; *People ex rel. v. Common Council of Troy,* 78 N. Y. 33.)   ·

Martin, J.   Section 2070 of the Code of Civil Procedure provides that a peremptory writ of mandamus may be issued, in the first instance, where the applicant's right to the mandamus depends only upon questions of law, and the proper notice has been given.   In every other case a peremptory writ cannot be issued until an alternative mandamus has been issued, served and the return day therefor has elapsed.   Where, upon motion for a mandamus, opposing affidavits are read which are in conflict with the averments in the affidavits of the relator, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and the question as to the right to the writ must be determined upon the assumption that the averments of the opposing affidavits are true. (*People ex rel. v. Cromwell,* 102 N. Y. 477; *People v. R., W. & O. R. R.,* 103 N. Y. 95; *People ex rel. Lewis v. Brush,* 146 N. Y. 60.)

The only allegations contained in the relator's affidavit which are to be taken as true are the allegations of fact that are undisputed and any allegation contained therein which is a mere conclusion of law should not be considered. (*Knapp v. City of Brooklyn,* 97 N. Y. 520, 523.) It is a well-established rule of law that the power to appoint to an office

or position, where the term or tenure is not defined by statute or otherwise, necessarily carries with it the power of removal. (*People ex rel.* v. *Fire Commissioners*, 73 N. Y. 437 ; *People ex rel.* v. *Robb*, 126 N. Y. 180.) As in this case there is no claim that the term or tenure of the office or position of superintendent of the Truant Home was defined by statute or otherwise, it follows that the common council possessed the authority to remove the relator, unless the statutes relating to firemen or honorably discharged soldiers and sailors prevented the relator's discharge.

Chapter 80, Laws of 1888, provides in substance that a keeper or assistant keeper, janitor or assistant janitor of any public building in the city of Brooklyn or the county of Kings, receiving a salary from the city or county treasury, who shall be an honorably discharged soldier or sailor of the late war of the Rebellion or who shall have been a member of the volunteer fire department of the city of Brooklyn at the time of the disbandment thereof, shall not be removed from such position except for good cause, shown after a hearing had, but shall hold such position for and during good behavior. Section 29, title 22, chapter 583 of the Laws of 1888, is to the same effect. Chapter 577, Laws of 1892, provides that no person holding a position by appointment in any city or county of this state, receiving a salary from such city or county, who is an honorably discharged soldier, having served during the war of the Rebellion, or who shall have served the time required by law in the volunteer fire department of any city or village in the state, or who shall have been a member thereof at the time of the disbandment of the volunteer department, shall be removed from such position except for cause shown after hearing had. Chapter 716, Laws of 1894, provides for preference of honorably discharged soldiers and sailors, in making appointments to public positions, and further provides that in all cases the person having the power of employment or appointment, unless the statute provides for a definite term, shall have power to remove soldiers and sailors so appointed

only for incompetency and conduct inconsistent with the position held by the employee or appointee.

From this examination of the statutes it is manifest that the appellants had no right to remove the relator and appoint another to fill the position occupied by him except for good cause shown after a hearing had, and had no right to remove him unless the position he occupied was abolished in good faith and for sufficient reasons. While these statutes are positive in form, it is clearly not their intent to give to occupants of such positions a life tenure where upon grounds of economy or for other proper reasons the office or position is in good faith abolished. In *People ex rel. Wardrop* v. *Adams* (22 N. Y. St. Rep. 856), it was held that an honorably discharged veteran of the Union army might be removed for the reason that the position he occupied was abolished on economical grounds, and its duties might be attached to an existing office which was held by a person not a veteran, and that such a removal was not in violation of the statutes relating to veterans of the war of the Rebellion holding positions in the city of Brooklyn. (See, also, *Phillips* v. *Mayor, etc.*, 88 N. Y. 245; *Lethbridge* v. *Mayor, etc.*, 133 N. Y. 232, 237.)

Assuming, then, that the appellants had the right to abolish the position occupied by the relator upon economic grounds, it follows that if the relator was discharged solely upon those grounds, the peremptory writ of mandamus was improperly issued. It is contended by the appellants that the duties which were formerly performed by the relator are now discharged by Eugene Martyn, who was, at the time, an employee of the appellants; that the change was made for economic reasons, and because the Home was extravagantly managed; that economy in the management of its affairs has been the result of the change, and, therefore, as the removal was made in good faith and for proper reasons, that they had the right to discharge the relator.

If, as we have already seen, the affidavits read by the appellants were such as to put in issue the facts alleged in the affidavit of the relator, and such as to show that the relator was

discharged in good faith and upon economical grounds, the court erred in awarding a peremptory writ. If the relator desired to dispute the facts contained in the answering affidavits and test their correctness, an alternative writ should have been issued, and the issues thus raised tried in the manner provided by statute. Hence, the real question is, whether, when the uncontradicted statements contained in the relator's affidavit and the statements in the answering affidavits are considered, the undisputed facts were sufficient to justify the court in holding, as a matter of law, that the relator was improperly discharged.

When we examine the affidavits we find that the relator, in his affidavit, makes a general statement to the effect that Eiseman was performing some of the duties formerly performed by him. This allegation is expressly denied. The relator also specifies what the duties performed by him were. He states that he made requisitions for supplies furnished under contracts by the city works department; that he received such supplies and certified to the department the correctness of the bills therefor; that he certified the monthly pay rolls; that he hired the employees, other than teachers, under the direction of the committee of the common council; that he was in general charge and custody of the Home and its inmates. The answering affidavits are to the effect that the only duties which were performed by the relator were making requisitions for supplies, certifying to the monthly pay rolls and hiring domestic servants, and that since his discharge those duties have been performed by Martyn. They expressly deny that the relator was in general charge and custody of the Home and its inmates, or that he was charged with the performance of any other duties than those last specified. The resolution appointing Eiseman gave him authority to appoint such laborers as might be necessary, while the relator was authorized to hire domestic servants, which duty has since been performed by Martyn. All the work falling within the duties of a janitor is alleged in the answering affidavits to have been performed by laborers and boys during the time

the relator was superintendent or keeper.   Thus it appears that practically all the services or duties which were rendered by or devolved upon the relator as superintendent of the Home were subsequently performed by Martyn, and that the duties assigned to Eiseman were not performed by the relator, but by laborers and boys employed at the Home.

This examination of the affidavits read upon the motion discloses that practically every essential allegation contained in the affidavit of the relator is denied so far as it relates to the nature and character of the work performed by him and that performed by Eiseman.   Under these circumstances it is manifest that the Special Term had no authority to grant a peremptory writ of mandamus.

It will be observed that by the amended order a peremptory writ was to issue directing the appellants to permit the relator to perform the work and services which are now performed by Eiseman, to assign to the relator the duties discharged by Eiseman and to permit the former to collect the salary or compensation therefor.   It is somewhat difficult to understand the theory upon which the court assumed the right to appoint the relator to discharge the duties of a janitor, which were not previously performed, or required to be performed, by him as superintendent of the Home.   We have examined the papers contained in the record in vain to find that the relator made any claim that he should be appointed janitor. On the other hand, his affidavit discloses that in January, 1895, when the question of his removal was pending before the common council, he notified the appellants that he was a veteran of the late war and veteran fireman, and claimed that he could not be removed as superintendent without a hearing; and also that, on May 6th, while the resolution removing him and appointing Eiseman janitor was pending in the mayor's hands, and before its approval, he gave a similar notice to the mayor.   In neither instance was there any suggestion that he was willing to assume or perform the duties which by that resolution were assigned to Eiseman.   Under these circumstances, with no claim upon the part of the relator that he

should be retained as janitor, we are unable to discover any authority which justified the court in directing the common council to appoint him as such in the place of Eiseman.

If it be claimed that the dismissal of the relator was not made in good faith, but for the purpose of evading the statute as to veteran soldiers and firemen; the answer is that the papers read upon the application for the order were not sufficient to justify the court in holding, as a matter of law, that such was the purpose of the appellants. That question could be determined only after a trial upon the return of an alternative writ.

We are of the opinion that the order should be reversed and the writ of mandamus dismissed, without costs.

All concur.

Ordered accordingly.