ALEXANDER CASSIDY *vs.* TRANSIT DEPARTMENT OF THE CITY OF BOSTON.

Suffolk.    December 3, 1924. — January 28, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Civil Service*, Veteran's preference, Transit department of the city of Boston. *Boston.*

When the powers and privileges of the Boston transit commission were transferred to the transit department of the city of Boston, "subject to all the duties, restrictions and liabilities heretofore conferred or imposed upon the commission and remaining in effect at the date of the" enactment of Spec. St. 1918, c. 185, that department of the city did not acquire the right to remove from its employment at pleasure a veteran entitled to notice and hearing under G. L. c. 31, § 26.

A veteran in permanent service as subway blacksmith of the transit department of the city of Boston, which was constituted by Spec. St. 1918, c. 185, enacting that "the city of Boston shall have all the powers and privileges, and be subject to all the duties, restrictions and liabilities heretofore conferred or imposed upon the commission and remaining in effect at the date of the passage of this act," cannot be discharged "by reason of lack of work" unless he is given a notice and hearing under G. L. c. 31, § 26.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on May 13, 1924, that "a peremptory writ of mandamus may issue, ordering the respondent forthwith to show proper cause and to make such legal determination as is required on the obligation of your petitioner," the petitioner alleging that he was unlawfully discharged from service by the respondents.

The petition was heard by *Carroll*, J., who found the facts described in the petition, ordered the writ to issue and reported the case for determination by this court.

*J. P. Lyons,* assistant corporation counsel, for the respondent.

*P. C. Borre,* for the petitioner.

SANDERSON, J.    Upon the admitted facts in the case, the petitioner is a veteran and so certified on the, civil service rolls, and entitled to veteran's preference within the meaning of G. L. c. 31.    On or about September 21, 1921, the civil service department of the Commonwealth assigned him for permanent service as a subway blacksmith, Boston transit department.    Under date of April 2, 1924, he was notified in writing by Thomas F. Sullivan, chairman of that department, that his services would be terminated at the close of business April 5, by reason of lack of work.    On May 13, 1924, this petition for a writ of mandamus was filed, alleging that the petitioner was illegally discharged by the head of a city department because he was not given the notice and hearing to which a veteran is entitled under G. L. c. 31, § 26.    The defendants in their answer denied that the petitioner was employed by a city department, and contended that the transit department of the city of Boston was created by an act of the Legislature for the purpose of constructing subways in Boston and that it is not governed, in the removal of employees, by G. L. c. 31, § 26.    The single justice of this court who heard the case, found that the petitioner was employed as a blacksmith by the transit department of the city of Boston, Spec. St. 1918, c. 185; that he was discharged for lack of work, as stated by the department in the order for his discharge; and that G. L. c. 31, § 26, was not complied with.    He ordered the writ to issue and reported the case for determination by the full court.

The Boston Transit Commission was created by St. 1894, c. 548, § 23, approved July 2, 1894.    By § 24 of the act, the commission was given authority to choose such engineers, clerks, agents, officers, assistants and other employees as it may deem necessary, to determine the duties and compensation of such employees, and to remove the same at pleasure.    The term of office of members of the commission was extended from time to time until July 1, 1918 (Spec. St. 1917, c. 368).    In *Mahoney* v. *Boston,* 171 Mass. 427, 429,

the court in discussing the status of employees of the transit commission said: "The commission constitutes in effect a special board, established by the Legislature for the purpose of laying out and building in the city of Boston at the expense of that municipality public ways along certain lines and between certain termini, and for that purpose it is given large powers and is rendered independent of any control or direction on the part of the city of Boston. The city authorities have nothing to do with the manner in which the work shall be done, or with the persons engaged in its performance; they have no control over the transit commissioners, and no voice in fixing the terms and rates for the use of the subway when completed, or any part thereof." By Spec. St. 1918, c. 185, entitled "An Act to provide for the transfer of the powers of the Boston Transit Commission to the City of Boston," it was provided that upon the expiration of the term of office of the Boston Transit Commission "the city of Boston shall have all the powers and privileges, and be subject to all the duties, restrictions and liabilities heretofore conferred or imposed upon the commission and remaining in effect at the date of the passage of this act." The powers and duties therein referred to are to be exercised by the mayor, commissioner of public works, and city treasurer, or by such person or persons, not exceeding three, as may be appointed by the mayor. The powers conferred and duties imposed by the act are exercised by three men appointed under its authority and known as the transit department of the city of Boston.

The question to be decided is, whether the right to remove employees at pleasure, given the transit commission in the act creating it, is now in force so that employees in the transit department of the City of Boston may be discharged at pleasure. The employees working in this department are in the service of the city of Boston and are its employees.

Veterans employed in the public service of a city are entitled to the notice and hearing provided for in G. L. c. 31, § 26, before being removed from such employment. The city of Boston in employing and discharging laborers is subject to the statutes and rules relating to the civil service.

G. L. c. 31, §§ 3, 47.   *McCarthy* v. *Emerson*, 202 Mass. 352. *Ransom* v. *Boston*, 192 Mass. 299.   *Ayers* v. *Hatch*, 175 Mass. 489, 490.

If it be assumed that the right to remove at pleasure an employee in the labor service of the transit commission continued until the transfer of its powers to the city of Boston, a question which we do not decide, that right did not continue in the city of Boston as to employees appointed under the civil service and entitled to veterans' preference. It is to be noted that the Legislature had already, by St. 1914, c. 636, provided that laborers employed by the Boston Transit Commission should be deemed to be in the service of the city of Boston within the provisions of the workmen's compensation act for public employees and to be entitled to the compensation provided by that act, and it may have been one of the purposes of the Legislature in transferring the powers and duties of the transit commission to the city of Boston to give the employees in the transit department the rights of employees under the civil service as well as all other rights which are incident to such employment.   This interpretation of the act finds some support in St. 1918, c. 24, which authorized the transfer of laborers and all other employees who were in the employ of the Boston Transit Commission on January 1, 1918, to any city in the metropolitan district without examination and notwithstanding any restrictions in the civil service laws or regulations applicable to such transfer upon a request to that effect by the head of a department in any such city.

In *Logan* v. *Mayor & Aldermen of Lawrence*, 201 Mass. 506, the question was raised whether St. 1906, c. 210, extending the civil service act to police officers of cities and giving them the right not to be removed except for just cause and for reasons specifically given in writing, applied to the city of Lawrence by whose charter (St. 1853, c. 70, as amended by St. 1887, c. 397) the power to appoint and remove police officers was given to the mayor and aldermen.   The city of Lawrence had accepted the provisions of the civil service law, R. L. c. 19, in the manner provided in § 36 of that

chapter. It was in that case contended that statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities. The court said, referring to St. 1906, c. 210: " This was enacted as a part of the broad scheme designed to bring about a reform in the civil service not only of the Commonwealth itself but quite as much of its cities and towns. . . . This body of laws [R. L. c. 19 and the acts passed in amendment and extension thereof] was intended to be of general application, except as restricted . . . To say that any city was to be exempted from the provisions of either the whole or any particular part of this legislation would be to frustrate the manifest intent of the Legislature. Almost all of the cities of the Commonwealth have in their charters provisions similar in kind to those which appear in the charter of the city of Lawrence, with reference both to the police department and to other branches of the civil service. General legislation like that which we are now considering must be deemed to be in amendment of all those charters, so far as it modifies their provisions." It does not seem probable that the Legislature intended to exempt one of the departments of the city of Boston from the provisions of the civil service statute which was of such general application and enacted to bring about a reform in the civil service. The Boston Transit Commission had been authorized in different years to construct several subways and tunnels and its duties had changed from time to time, and the words " remaining in effect at the date of the passage of this act " in the statute transferring the duties of the commission to the city of Boston, might appropriately refer to these " duties," many of which no longer remained in effect. But if they be construed to relate also to the " powers " of the commission, the act does not confer upon the city or the transit department the right to remove a person in the position of this petitioner except upon compliance with the provisions of G. L. c. 31, § 26.

The nature of the work that the transit commission was required to do does not modify or change the conclusion here

reached; nor does the fact that the reason for notifying the petitioner of the termination of his services was lack of work. He still had the statutory right to notice and hearing.

Upon the facts before us the removal was unlawful, and in accordance with the order of the single justice,

*Writ of mandamus is to issue.*