Argued April 4, reversed June 25, 1929.

GRACE FUNSTON *v.* DISTRICT SCHOOL BOARD FOR SCHOOL DISTRICT No. 1, MULTNO-MAH COUNTY, ET AL.

(278 Pac. 1075.)

84

For appellants there was a brief and oral argument by *Mr. Sam H. Pierce.*

For respondent there was a brief over the name of *Mr. A. E. Clark,* with an oral argument by *Mr. R. R. Bullivant.*

ROSSMAN, J.—The plaintiff apparently does not contend that the legislative enactment, commonly referred to by the teaching profession as the Tenure of Office Act, being Session Laws of 1913, Chapter 37, as amended by Session Laws of 1917, Chapter 152, and again amended by Session Laws of 1921, Chapter 247, which is the legislation she relies upon, deprives the board of directors of power to effect economies, re-arrange the curriculum or adopt any other course which may incidentally lessen the need for teacher's services; but argues that the aforementioned act stays the hand of the board when it proposes to discontinue the services of a teacher for whom there is no class. The plaintiff makes no charge of bad faith, but confines her contentions solely to the propositions that a dismissal of one, who holds a life certificate, on account of the lack of need of services is not authorized by the above act, and that in her case the procedure outlined by the act was not followed, and therefore the dismissal was invalid.

We have carefully read the Tenure of Office Act, particularly the portions the plaintiff relies upon, but find it impossible to draw the conclusion which counsel suggests. To us it seems that plaintiff's position can be sustained only in the event that words can be found in the act which undertake to provide teachers, situated like the plaintiff, with a life income conditioned only upon their proper conduct.

Although plaintiff's counsel has apparently made a painstaking analysis of the act he has pointed out no such provision. In its absence he argues that the Tenure of Office Act regulates the discharge of teachers, and that since a severance of employment, by reason of a program of economy or a lack of further need for the teacher's services, is not expressly mentioned in the act, such developments do not permit the board to dismiss a teacher who holds a life certificate. Before accepting that conclusion it may be well to consider briefly the reasons which underlie legislation regulating the discharge of teachers and other public employees. When such an employee's services must be discontinued because of the demands of economy, or by reason of a lack of pupils, the cause does not have its inception in the teacher, but arises from a source foreign to her and over which she possesses no control. But when her misconduct results in a complaint and subsequently in a dismissal, the cause is personal to herself. Because a ground of removal of the type first above mentioned is one which she did not create and which she could not explain away, statutes of this kind, which regulate the dismissal of teachers and other public employees generally, are interpreted as intending only a regulation of dismissal for causes personal to the employee. An investigation into a situation of the type first mentioned would constitute an inquiry into the policy of the Board, and the wisdom of the course is adopted. It is not difficult to perceive that a few decisions by the reviewing tribunal upon matters of policy, adverse to the board, would soon dispossess the latter of its authority and usurp it to the former.

Authority in support of the above observation may be found in our reports. Thus in *Venable* v. *Police*

*Commrs.*, 40 Or. 458 (67 Pac. 203), this court speaking through Mr. Justice WOLVERTON, held:

"In view of these powers and functions imposed upon the board, it was declared that all appointments made thereby should continue during good behavior, and that no officer or member of the department should be removed or reduced in rank or pay upon political grounds, or for any reason except inefficiency, misconduct, insubordination, or violation of law, after a fair trial upon complaint regularly preferred, and reasonable notice: Sections 99–101. These latter regulations are restrictions upon the powers previously accorded, and are to be construed as limiting the power of removal for cause to those several reasons enumerated, but the power to so administer the affairs of the department as to keep the expenditures within the estimated revenues is not thereby restrained or circumscribed. Having the power to organize the police force in the first instance the commissioners have the power to increase or reduce it as the exigencies and proper management may require; and therefore, if the anticipated revenues are insufficient to meet the requirements of an efficient service, they may reduce the force so that the expenditures will not exceed the appropriations, if practicable.

"This is a view taken of a like situation in New York, and seems reasonable and sound. It was there enacted that 'no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation, and in every case of removal, the true grounds thereof shall be forthwith entered upon the records of the department or board,' the object of which legislation was declared to be to prevent removals except for cause, and then only after an opportunity to be heard. It was adjudged that such enactment had no application to the case where a clerkship was abrogated, because there was no further need for the services, or for the lack of available funds with which to meet expenses. In another case it was said that the provision has no

application to a case where the incumbent was dismissed for want of funds, or in order to reduce expenses: * * "

From Dillon on Municipal Corporations (5 ed.), Section 479, we quote:

"The purpose of the civil service statutes and of other laws prohibiting discharge of employees without cause assigned, notice and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations. These statutes are not intended to affect or control the power of the city council or the executive officers of the city to abolish offices when they are no longer necessary or for reasons of economy. They are not intended to furnish an assurance to the officer or employee that he will be retained in the service of the city after the time when his services are required. They do not prevent his discharge in good faith without trial and without notice when the office or position is abolished as unnecessary or for reasons of economy."

In 43 C. J., Municipal Corporations, Sections 977, 978, 979 and 1384, the editor considers the application of various types of service acts to public employees, and finds that generally statutory regulations specifying the procedure to be followed in the discharge from the public service of incumbents do not apply when the severance of employment is the result of abolishment of the position or the office.

The above texts cite numerous authorities which support the writer's statements. The case of *Fitzsimmons* v. *O'Neill*, 214 Ill. 494 (73 N. E. 797), is well reasoned and reviews numerous adjudications. *State ex rel. Burris* v. *Seattle*, 82 Wash. 464 (144 Pac. 695), which is in accord, is an adjudication from our neighboring tribunal. See, also, *Heath* v. *Salt Lake*

*City,* 16 Utah, 374 (52 Pac. 602). From *Fitzsimmons* v. *O'Neill, supra,* we quote:

"It certainly would be a harsh doctrine to hold that a city or its officials could not reduce their expenses by abolishing an unnecessary office or refusing to make an appropriation for the salary of an office when it was short of funds and did not need the services of the incumbent of such office."

The following, taken from *Phillips* v. *Mayor etc. of New York,* 88 N. Y. 245, is pertinent:

"The object of this provision was to prevent removal except for cause, and then only after a hearing or an opportunity for a hearing. The purpose of a hearing was to enable the clerk or officer proceeded against to satisfy the body or officer, having the power of removal, that he should be retained. The provision has no application to a case like this. This is not, properly speaking, a case of removal within the meaning of the statute. Here, the office or clerkship was abrogated, and there was no more need of plaintiff's services. He could not claim that the office or clerkship should be retained for his benefit, and the fire commissioners were not obliged to consult him before abrogating it. And further, the statute does not apply to a case like this where the officer is removed, not to make way for another, but because his services are no longer needed, or because there are no funds provided for his payment. The plain purpose of the statute does not reach such a case."

Counsel for the plaintiff in a brief, which gives evidence of much industry, calls to our attention several adjudications which he contends are adverse to the above: *Evans* v. *Freeholders,* 53 N. J. Law, 585 (22 Atl. 56); *Hill* v. *City of Boston,* 193 Mass. 569 (79 N. E. 825); *Cassidy* v. *Transit Department,* 251 Mass. 71 (146 N. E. 357); *People ex rel.* v. *Mayor of Brooklyn,* 149 N. Y. 225 (43 N. E. 554); *Garvey* v. *Lowell,* 199 Mass. 47 (85 N. E. 182, 127 Am. St. Rep.

468); *State ex rel. Driffel* v. *City of Anaconda,* 41 Mont. 577 (11 Pac. 345); *Phillips* v. *Mayor,* 88 N. Y. 245.

■ Nothing contained in *Evans* v. *Freeholders of Hudson, supra,* supports the plaintiff's contention; it recognizes the right to the abolishment of the office and the discharge of the employee. We quote from it: "The statute was not designed for the purpose of perpetuating the existence of the office." In *People ex rel.* v. *Mayor, supra,* we find: "While these statutes are positive in form, it is clearly not their intent to give to occupants of such positions a life tenure where, upon grounds of economy or for other proper reasons, the office or position is in good faith abolished." The court held that where the right existed to abolish a position for economy the writ of *mandamus* was improperly issued if the incumbent was in good faith discharged solely upon these grounds. From *Phillips* v. *Mayor, supra,* we have already quoted. Of the remaining cases cited by the plaintiff, *Hill* v. *Fitzgerald, supra, State ex rel.* v. *City of Anaconda,* and *Garvey* v. *Lowell, supra,* lend but scant, if any, support to plaintiff's contention. In *Cassidy* v. *Transit Department, supra,* the Massachusetts court adopted a construction of an act which required notice to an employee before his position could be vacated by its abolishment. Finding nothing in these cases which warrants the contentions advanced by the plaintiff, we conclude that a Tenure of Office Act, of the type before us, was not intended to deprive the board of directors of the power to terminate an incumbent's employment when there ceased to be any further need for the teacher through a program of economy, in good faith adopted, or through a lessening in the number of pupils even though the act con-

tained general words concerning discharges from the public service.

There remains for disposition only the contention that when the board of directors undertook to terminate plaintiff's services it was required to follow the procedure prescribed by the Tenure of Office Act, and that its failure to do so rendered its action illegal. Our observations, above, are in part applicable to this contention. But, we shall go on. Section 5246, Or. L., as amended by Chapter 247, Session Laws of 1921, which is the section of the act outlining the procedure to be followed in making dismissals, contemplates the filing of charges against the teacher and service of a copy of the same upon her. The fact that the act speaks of "charges" negatives any inference that the statute seeks to regulate a dismissal upon some ground which is not personal to the teacher. Next, the fact that the trial, in the first instance, shall be conducted with the board of directors as the judges, argues strongly that if the dismissal is on account of a program of economy, or a lack of need for the teacher's services, the procedure outlined by Section 5246 is not applicable. Such programs are instituted by the board, and it would be an anomaly for them to sit as judges upon the merits of causes of dismissal which they created. The case of *Venable* v. *Board of Police Commrs., supra,* decided by this court, is an authority against plaintiff's contentions. From *Kenny* v. *Kane,* 27 Misc. Rep. 680 (59 N. Y. Supp. 555), we quote:

" * * To give an employee an opportunity to make an explanation when there is nothing to explain would be an idle ceremony. * * where the cause for removal was, not an alleged dereliction or unfitness, but some reason which no explanation could remove, such as an exhaustion of appropriation, and abolition

of an office, or the devolution of the duties of an office upon some other person already holding another position.''

To like effect, see *Fitzsimmons* v. *O'Neill, supra,* from which we quote:

''Section 12 of the Civil Service act provides that 'no officer or employe in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense.' (Session Laws of Ill. 1895, p. 88.) The appellant contends that the removal was illegal because no written charges were made against him, and he had no opportunity to be heard in his own defense. We are of the opinion that section 12 of the Civil Service Act has no application to a case like the present. That section refers to cases where an officer or employe is removed for some reason personal to himself. His right to be heard in his defense upon written charges, as specified in section 12, implies that the cause of his removal is some dereliction, or neglect of duty, or incapacity to perform duty, or some delinquency, which affects his fitness for the position occupied by him. The provision in question does not apply to a case where the incumbent is dismissed for want of funds, or in order to reduce expenses, and when at the time of the dismissal, as was the fact in the case at bar, he has notice of that fact.''

The following cases reached the same results: *Lethbridge* v. *Mayor of New York,* 133 N. Y. 232 (30 N. E. 975), and *People* v. *Waring,* 7 App. Div. 204 (40 N. Y. Supp. 275).

■ ■ We conclude that when the cause of dismissal is not personal to the teacher the act does not require an adherence to the procedure prescribed by Section 5246. Having determined both contentions adversely

to the plaintiff it follows that the lower court erred in its conclusions. Since the plaintiff was not lacking in ability, nor in aptitude for her work, it is unfortunate that she could not be assigned to some other duties, but due to her limited certificate we understand that the board was without authority to provide other work for her: Sections 4960, 5042 and 5054, Or. L.; 24 R. C. L., Schools, § 73.

It follows from the foregoing that the judgment of the Circuit Court is reversed and the cause remanded to that tribunal with directions to dismiss the writ.

REVERSED AND REMANDED, WITH DIRECTIONS.

COSHOW, C. J., and McBRIDE and RAND, JJ., concur.