Argued October 23, reversed and remanded December 23, 1974,
reconsideration denied January 29, petition for review
denied February 19, 1975

SCHAAF, *Appellant, v.* EUGENE SCHOOL
DISTRICT No. 4J, *Respondent.*

BARHAM, *Appellant, v.* EUGENE SCHOOL
DISTRICT No. 4J, *Respondent.*

529 P2d 943

*Henry H. Drummonds,* Eugene, argued the cause for appellants. On the brief was Robert D. Durham, Eugene.

*Bruce Smith,* Eugene, argued the cause for respondent. With him on the brief were Riddlesbarger, Young, Horn & Cass, Eugene.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

SCHWAB, C. J.

In February of 1974 petitioners, administrative employes of the respondent school district, were notified that their employment would be terminated at the end of the school year because of an "administrative reorganization plan." Petitioners promptly requested a hearing before the Fair Dismissal Appeals Board. The Board held that they were not entitled, under the terms of the Fair Dismissal Law, ORS 342.805 et seq, to a hearing. Petitioners appeal from that determination.

Petitioner Schaaf had, for many years, held the administrative position of Mathematics Coordinator. Petitioner Barham had, for many years, held the administrative position of Coordinator of Inservice and Teacher Education. In January of 1974 the respondent school district adopted an administrative reorganization plan.[1] Twenty-seven administrative positions were to be abolished at the end of the 1973-74 school year, and 17 new administrative positions were to be created. The net loss of 10 positions included the two held by petitioners.

The respondent school district is subject to the requirements of the Fair Dismissal Law. Petitioners, because of their long-time employment, enjoy the job-security protections of that law.

---

[1] Although petitioners were denied a hearing in the "live testimony" sense of that term, there was a hearing consisting of the arguments of counsel before the Fair Dismissal Appeals Board. As noted in Part E of this opinion, infra, many factual representations—such as the details of respondent's reorganization plan—were made before the Board at that time.

■ Generally speaking, public employes can be discharged for personal and for nonpersonal reasons. Personal reasons include an individual's misconduct or incompetence. Nonpersonal reasons include abolition or curtailment of a public program because of insufficient funds or for other reasons.

Against this background, the narrow issue presented is: When the school district sought to terminate petitioners' employment for nonpersonal reasons (a reorganization), did the school district have to comply with the procedural requirements of the Fair Dismissal Law, ORS 342.805 et seq? It is conceded that the school district has the substantive authority to terminate petitioners' employment for nonpersonal reasons; the issue here relates only to the procedures by which this may be done. No constitutional issue is presented; the issue is whether by statute petitioners are entitled to a hearing before the Fair Dismissal Appeals Board.

A. Overview of the Statutes

The Fair Dismissal Law provides that "permanent teachers" can only be dismissed for the causes enumerated in ORS 342.865 (1), and through the procedures specified in ORS 342.895 to 342.915. The required procedures include: twenty days' advance written notice of the planned discharge, ORS 342.895 (2); school board approval of the discharge, ORS 342.-895 (3); the right to appeal a discharge to the Fair Dismissal Appeals Board, ORS 342.905 (1); a hearing before a panel of the Board, ORS 342.905 (4); and judicial review of the Board decision, ORS 342.905 (8).

A "permanent teacher" is defined as a teacher who has been employed for not less than three years. ORS 342.815 (5). A "teacher" is defined as a person

employed full-time as an instructor or administrator. ORS 342.815 (8). When these statutory definitions are read into the balance of the Fair Dismissal Law, it is apparent that the above-described procedures must be followed for the discharge of a permanent teacher, i.e., instructor, and for the discharge of a permanent teacher, i.e., administrator.

■ Also relevant is ORS 342.845 (2). It provides:

"No permanent teacher who has served as an administrator in a particular position for a period of three successive years in a tenure district shall be transferred to a lower paying position as an administrator or to a nonadministrative position without his consent except for the reasons for which a permanent teacher may be dismissed as provided in ORS 342.200 and 342.805 to 342.955 and in accordance with the procedures set forth in ORS 342.-200 and 342.805 to 342.955 pursuant to which a permanent teacher may be dismissed."

The effect of this provision is to grant greater job-security protection to administrators than to instructors. Whereas both administrators and instructors enjoy the general protection against *dismissal* afforded by ORS 342.865 (1), there is no statutory limitation on the *transfer* of instructors from one position to another, but there is a limitation on the *transfer* of administrators from one position to another stated in ORS 342.845 (2). The statutory history of the Fair Dismissal Law contains no explanation for the greater job security afforded administrators, as distinguished from instructors.

There is an ambiguity in this record as to whether this is an ORS 342.865 (1) (dismissal) case or an ORS 342.845 (2) (transfer) case. The initial notices to petitioners stated that their contracts "with the

School District * * * will be terminated at the end of the 1973-74 school year." This was apparently regarded by all concerned as a dismissal. However, petitioners' brief states that after their appeals were filed with the Fair Dismissal Appeals Board "the respondent [school board] informed petitioners that they had been transferred from their administrative positions to positions as classroom teachers for the school year 1974-75." But this ambiguity is not significant because the same rules govern the dismissal of all teachers (instructors and administrators) and the transfer of administrators.

B. The pre-1973 Statutes

Before the adoption of 1973 amendments to the Fair Dismissal Law, the enumerated statutory reasons for dismissal of a teacher were all "personal" to the teacher involved—things like inefficiency, immorality and insubordination. See, ORS 342.865 (1) (a) to 342.865 (1)(i). Interpreting a predecessor statute, in *Funston v. District School Board, etc.*, 130 Or 82, 278 P 1075 (1929), the Supreme Court concluded that

> "* * * a Tenure of Office Act, of the type before us, was not intended to deprive the [school] board of directors of the power to terminate an incumbent's employment when there ceased to be any further need for the teacher through a program of economy, in good faith adopted, or through a lessening in the number of pupils even though the act contained general words concerning discharges from the public service." 130 Or at 90-91.

See generally, Annotation, 100 ALR2d 1141 (1965). As noted above, this aspect of *Funston*—that substantive authority to discharge for nonpersonal reasons exists —is not here in question.

What is questioned is whether the school board must follow the statutory procedures governing dismissal for personal reasons when it dismisses for nonpersonal reasons. This was also considered in *Funston* and answered in the negative. The court reasoned that when a tenured teacher is discharged for personal reasons, such as misconduct or incompetence, such reasons had their inception in the teacher; therefore, a hearing is an opportunity for the teacher to refute the asserted ground for dismissal. When, however, the ground for dismissal is not personal in nature, such as reorganization of the school faculty or administration, no amount of explaining by the teacher whose position is incidentally abolished could create enough money or students to justify reinstatement. The court concluded that to hold a hearing in the latter circumstances "would be an idle ceremony" because the teacher would be powerless to negate the nonpersonal cause for dismissal. 130 Or at 91, quoting from *Kenny v. Kane,* 27 Misc 680, 681, 59 NYS 555 (1899).

## C.  The 1973 Amendments

As noted in Part B above, the original statutory grounds for discharge of teachers were all personal ones. Oregon Laws 1973, ch 298, section 4, added paragraph (j) to ORS 342.865 (1). This provides, for the first time in Oregon, statutory recognition of nonpersonal reasons for discharge:

"(1) No permanent teacher shall be dismissed except for:

"* * * * *

"(j) Reduction in permanent teacher staff resulting from the district's inability to levy a tax sufficient to provide funds to continue its educational program at its anticipated level or resulting

from the district's elimination of classes due to decreased student enrollment or reduction of courses due to administrative decision. School districts shall make every effort to transfer teachers of courses scheduled for discontinuance to other positions for which they are qualified. Merit and seniority shall be considered in determination of a teacher for such transfer."

The question in this case comes down to whether this 1973 amendment to the Fair Dismissal Law now provides that the procedural requirements of that law (notice and hearing, etc.) are applicable to nonpersonal dismissals of instructors and administrators and nonpersonal transfer of administrators.

The parties' briefs well state their respective positions on the effect of the 1973 amendment. Petitioners' brief argues:

"This legislation rejected the reasoning of the *Funston* case that a tenured teacher is entitled to the procedural safeguards of the Fair Dismissal Law only when the school board seeks to dismiss the teacher for personal reasons. The Legislature has instead adopted the view that whether the reason for dismissal is personal or non-personal, the teacher is entitled to notice and a hearing.

"At the hearing, the teacher has the opportunity to demonstrate that the reason asserted for the dismissal is invalid. For example, if the teacher's class is abolished due to a 'reduction of courses due to administrative decision' (see ORS 342.865 (1) (j)), the teacher now has the opportunity to demonstrate that the course which he had previously taught in fact still exists, and has simply been re-named by the school board. Such evidence would disprove the ground of dismissal that there has been a reduction of courses, and would entitle the teacher to be reinstated in his position.

"What has been said applies with equal force in

the case of a tenured administrator who has been demoted from his position due to an administrative reorganization which abolishes his office. ORS 342.845 (2) incorporates the same non-personal grounds for demotion of a tenured administrator * * * ."

Respondent's brief argues:

"The primary issue in this case is whether the established case law in Oregon has now been changed by the 1973 legislative amendment to the Fair Dismissal Law which added paragraph (j) [ORS 342.865 (1)(j)] * * *. This amendment added three precisely stated nonpersonal grounds for dismissal, which has the effect of requiring compliance with the Fair Dismissal Law only if the dismissal falls within one of those categories. Under the 1973 amendment, dismissal of permanent teachers is brought within the provisions of the Fair Dismissal Law when there is a reduction in permanent teaching staff resulting from:

"(a) Lack of funds due to inability to levy a sufficient tax.

"(b) Elimination of classes due to decreased enrollment.

"(c) Reduction of courses due to administrative decision.

"* * * * *

"* * * [T]he legislature, by increasing the statutory grounds for discharge to include some which are nonpersonal to the teacher, did not intend to rule out all other nonpersonal grounds which have traditionally been allowed. Prior to the 1973 legislation there was no question but that abolishment of a position for grounds nonpersonal to the teacher or administrator was permissible, even though not specified in the Fair Dismissal Law. By including some nonpersonal grounds which have primary applicability to teachers, it was not the intent of the legislature to rule out all other

nonpersonal grounds which apply to administrators and are necessary for an administrative reorganization.

"* * * * *

"* * * Petitioners appear to be arguing that the third ground for discharge under paragraph (j), 'reduction of courses due to administrative decision,' should be construed to mean with respect to administrators: 'the elimination of a tenured administrator's position due to administrative decision.' * * * That is a tortured construction of a statute which on its face appears to be clear and unambiguous."

D. Analysis and Conclusions

We disagree with respondent's argument that ORS 342.865 (1)(j) is clear and unambiguous. The statute starts with a reference to "permanent teacher staff." Reading this together with the rest of the Fair Dismissal Law, as we must, we learn from the definitions of "permanent teacher" in ORS 342.815 (5) and "teacher" in ORS 342.815 (8) that these terms include both instructors and administrators. Thus, ORS 342.-865 (1)(j) would appear to be equally applicable to instructors and administrators.

However, the balance of ORS 342.865 (1)(j) uses language that is arguably more relevant to instructors than to administrators; for example, "elimination of *classes* due to decreased student enrollment or reduction of *courses* due to administrative decision." (Emphasis supplied.) This language can be read to imply that ORS 342.865 (1)(j) is not equally applicable to instructors and administrators.

Our duty is to ascertain and give effect to the purposes behind the adoption of ORS 342.865 (1)(j). In an effort to do so, we have examined the available

legislative history materials relevant to House Bill 2132 which was passed by the 1973 session of the Legislative Assembly and codified as the statute in question. They contain nothing which is illuminating on the question before us.

■ In interpreting ORS 342.865 (1)(j) we must attempt to avoid absurd results. *State v. Irving*, 268 Or 204, 520 P2d 354 (1974). In this case any interpretation can arguably produce absurd results. If the statute is interpreted to mean that there must be compliance with the procedural requirements of the Fair Dismissal Law before petitioners can be discharged or transferred because of adoption of a reorganization plan, then we might be requiring what the court in *Funston* called an "idle ceremony." Yet by way of the 1973 adoption of ORS 342.865 (1)(j) the legislature has seen fit to provide for such a "ceremony" in some situations, be it idle or not. Specifically, when instructors are discharged for the reasons enumerated in ORS 342.865(1)(j) there must be procedural compliance with the Fair Dismissal Law including the "ceremony" of a hearing before the Fair Dismissal Appeals Board.

On the other hand, if the statute is interpreted to mean that administrators can be discharged or transferred for nonpersonal reasons without the need to comply with the procedures specified in the Fair Dismissal Law, then we would produce the following situation. A school board reorganization or other decision prompted, for example, by decreased student enrollment creates the need to discharge some instructors and some administrators. Clearly the instructors would be entitled to a hearing under the express terms of the Fair Dismissal Law as amended in 1973. Yet

under the interpretation urged by respondent, administrators discharged at the same time would not be entitled to a hearing. Such a result seems anomalous, if not absurd.

■ Balancing the relative absurdities, we conclude that the more likely intent behind ORS 342.865 (1)(j) was to make the procedural requirements of the Fair Dismissal Law applicable to all, or substantially all, nonpersonal discharges of instructors and administrators and, by operation of ORS 342.845 (2), to the transfer of administrators. Our reasons for this conclusion are: (1) ORS 342.865 (1)(j) is applicable to "permanent teachers," which, as noted above, includes instructors and administrators; (2) there is a long-standing statutory policy, now generally preserved in the Fair Dismissal Law, to afford substantially the same tenure protection to school instructors and school administrators;[2] and (3) of the possible "absurd" results, the more unreasonable would be to hold that when an instructor and an administrator are discharged at the same time for the same nonpersonal reason, the former is entitled to a hearing but the latter is not.

Having found no guidance in the legislative history, we can only speculate about the reasons which

---

[2] Oregon's first statutory treatment of the power of a school board to discharge teachers was passed in 1913. Oregon Laws 1913, ch 37, p 69. In 1917 the Supreme Court, in a case involving a transfer of a school principal, held that the 1913 statute was not applicable to administrators. Alexander v. School District No. 1, 84 Or 172, 164 P 711 (1917). The same year the *Alexander* case was decided the legislature amended the 1913 statute. The new statute, Oregon Laws 1917, ch 152, section 2, pp 196, 197, provided: "The word 'teacher' or 'teachers,' as used in this Act shall include all supervisors and principals and instructors * * *." Since 1917 all of Oregon's teacher tenure laws have treated instructors and administrators substantially alike.

led the legislature to extend the procedural right to a hearing to an instructor discharged for nonpersonal reasons. It may have been that the legislature wanted instructors to be able to contend that the supposed nonpersonal reason was really a subterfuge for a personal reason, although there is authority that suggests that the adoption of ORS 342.865 (1)(j) was unnecessary to deal with such a situation.[9] It may have been that in guaranteeing procedural fairness to instructors the legislature wanted to err, if at all, in the direction of insuring both fairness and the absolute appearance of fairness. And it may have been that the legislature contemplated that the major issue to be determined at a hearing would be whether the school board had made "every effort to transfer teachers [discharged for nonpersonal reasons] * * * to other positions for which they are qualified" as required by ORS 342.865 (1)(j). But whatever the reasoning behind the 1973 amendment in question, we fail to see how that reasoning could have intended to distinguish between instructors and administrators.

■ School instruction and school administration are not, after all, unrelated activities that occur in distinct watertight compartments. School board decisions about a school's curriculum often have an impact on the administrative staff. School board decisions about its

---

[9] Makinson v. School District No. 4, 209 Or 232, 304 P2d 1076 (1956), involved a teacher reduced from full-time to half-time employment. The school board contended there was a nonpersonal reason for the change. The teacher contended the asserted nonpersonal reason was really a subterfuge for a personal reason. The circuit court agreed with the teacher and issued a writ of mandamus to compel compliance with the statutory procedures applicable to demotions for personal reasons. On appeal, the Supreme Court implicitly approved of the use of mandamus in such a situation, but ultimately dismissed the appeal as moot because the teacher had been reinstated to full-time employment.

administrative staff often have an impact on curriculum. Therefore, in the absence of any indication that the legislature intended to create different procedures for the discharge of instructors as distinguished from administrators, we conclude that the language of ORS 342.865 (1)(j) must be broadly interpreted to require compliance with the procedures specified in the Fair Dismissal Law when there is any reduction in staff—meaning instructors and administrators—due to nonpersonal reasons. And reading ORS 342.865 (1)(j) together with ORS 342.845 (2), the same procedures must be followed to effect certain transfers of administrators.

E. Nature of Contemplated Hearing

Although not specifically raised as an issue, we have doubts about the procedures the parties followed before the Fair Dismissal Appeals Board in this case. Petitioners filed the required appeals to the Board. *See,* ORS 342.905 (1). The school board filed a "demurrer and motion to dismiss." The school board attached several documents—including the text of its reorganization plan and some correspondence between the board and petitioners—to a written memorandum in support of the "demurrer." The parties then orally argued the "demurrer" before the Fair Dismissal Appeals Board, making several factual representations during the argument. The Fair Dismissal Appeals Board then entered an order that petitioners' appeals "be dismissed" because the Board lacked jurisdiction.

We do not recognize this as the ordinary demurrer situation, where the only "facts" considered are the assumed-to-be-true allegations of the pleading in question. What the parties did appears more akin to summary judgment practice in the federal courts—the

use of documentary evidence, affidavits, etc., in order to ascertain whether there is a genuine dispute as to any material fact which necessitates holding an evidentiary hearing with live testimony.

■ While we disapprove of the labels the parties used, we approve of the use of a summary judgment approach in these kinds of cases. A discharged teacher must first file a "notice of appeal" to the Fair Dismissal Appeals Board containing "a brief statement giving the reasons for the appeal." ORS 342.905 (1). The school board should then be entitled to file documentation that explains the nonpersonal reasons for the discharge. The Fair Dismissal Appeals Board could then reasonably require the teacher to respond specifically indicating what facts are disputed. If no facts are in dispute, then there is no need to hold a hearing for the taking of live testimony, and the Board can proceed to a decision on the merits based on the documentation before it.

That may have been what the parties and the Fair Dismissal Appeals Board were attempting to do in this case. Yet the Board's order states that petitioners are not entitled to a hearing because the Board lacked jurisdiction. That is erroneous for the reasons stated above. If the Board really meant that based on undisputed facts it upheld petitioners' dismissal or transfer on the merits, on remand it is entitled to so state.

Reversed and remanded for further proceedings consistent with this opinion.