Argued September 23, reversed and remanded October 7, 1953;
argued on rehearing January 6, 1954, former decision
set aside; judgment affirmed March 10, 1954,
petition for rehearing denied April 7, 1954

# LOMMASSON *v.* SCHOOL DISTRICT No. 1, MULTNOMAH COUNTY

### 261 P. 2d 860
### 267 P. 2d 1105

*Randall S. Jones,* of Portland, argued the cause for appellant. With him on the briefs was Robert L. Weiss, of Portland.

*Grant T. Anderson* argued the cause for respondent. On the brief were King, Wood, Miller, Anderson & Nash, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, TOOZE and PERRY, Justices.

WARNER, J.

Plaintiff-appellant was at one time employed as a teacher in the public schools of the city of Portland, Oregon, by the directors of School District No. 1 of Multnomah county, the defendant-respondent. She brings this action to recover damages claimed to have been sustained by reason of defendant's refusal to

recognize her alleged right to continued employment as a "permanent" teacher. From a judgment of involuntary nonsuit, plaintiff appeals.

Beginning in 1938, and for many years following, plaintiff taught millinery in Girls' Polytechnic High School; but during the school year 1949-50, and thereafter, the district refused to employ her except on a part-time basis.

Plaintiff represents that, having previously taught full time for three successive school years as a teacher regularly appointed and employed with an annual salary, she thereby acquired a permanent status under the Teachers' Tenure Law (§§ 111-2301—111-2320, OCLA) and, having that status, contends that the district is obligated to continue to employ her. The plaintiff has arbitrarily selected the history of her employment during the school years of 1933-44, 1944-45 and 1945-46 upon which to predicate and demonstrate the righteousness of her claim.

The district controverts these contentions, alleging that during the foregoing school years, her employment was only as an "assigned substitute" and, relying on § 111-2304, OCLA, asserts that by virtue of that circumstance she was specifically excepted from the beneficient provisions of the tenure law.

This appeal calls for the resolution of three principal questions: First, Do all teachers of the district (other than substitutes) have to pass through a probationary status before attaining a "permanent" classification, or can the board under the provisions of § 111-2304 regularly appoint and employ some of them without subjecting them to the tests involved in the elevation from probationary to permanent rank? Second, Is a teacher who is appointed and regularly

employed to fill a position not temporarily vacated by the absence of another regularly retained, denied the benefit of tenure status because in her contracts for such service she is described as an "assigned substitute"? Third, If the teacher's employment was initially within the power of the district and evidenced by contracts not executed with all the statutory formalities, can the district thereafter ratify them?

Before examining the Teachers' Tenure Law in the light of the divergent positions of the respective parties, it will not be amiss to note that this law has as its foundation the all important public policy of giving further protection to the educational system of our state, rather than the granting of special privileges to teachers as a class or as individuals. Its broad objective is to maintain stability in teaching staffs and to avoid the evils of a fluctuating personnel so frequently incident to manifestations of prejudice, favoritism or arrogance on the part of school administrators. It therefore follows that the act should receive a liberal construction to effect its general plan as an act designed to promote the public interest. *State v. Stout,* 206 Ind 58, 187 NE 267, 269; *McSherry v. City of St. Paul,* 202 Minn 102, 277 NW 541, 546.

We look first to § 111-2304, OCLA, since it is the section of the tenure law wherein we find the basic requirements prerequisite to the attainment of permanent or "tenure" status. It reads:

"The words 'teacher' or 'teachers,' when used in this act, shall mean and include all supervisors, principals, vice principals, directors of departments and/or instructors now employed, or who hereafter may be employed, by any such school district. 'Permanent' teacher or teachers shall mean and include all teachers who have been regularly ap-

pointed and employed by any such school district for not less than three successive school years, *or* who may hereafter be placed upon the permanent list by resolutions of the school board as hereinafter provided. 'Probationary' teacher or teachers shall mean and include all teachers, other than substitute teachers, regularly appointed and employed by any such school board during a probationary period of three successive school years, and until placed upon the permanent list as provided in section 111-2307.'' (Italics ours.)

Section 111-2307, OCLA, referred to in § 111-2304, as amended by ch 137, Oregon Laws 1945, provides:

"Probationary teachers who have been employed in the schools in any such district or districts as regularly appointed teachers for not less than three successive annual terms, if retained, shall be placed by the board of directors upon the list of permanently employed teachers; * * * provided further, that no probationary teacher shall be placed upon such permanently employed list until the board upon consideration of records and ratings, to be regularly and periodically made to the board, is satisfied as to qualifications and adopts a resolution transferring such teacher from the probationary list to the permanently employed list.''

Plaintiff is in no wise challenged by charges of inefficiency, unbecoming or other conduct which might warrant a dismissal under the provisions of § 111-2311, OCLA. It was stipulated that she was employed on a "substantially full-time basis'' during the three school years which are made the basis of her claim for tenure and that during those years *she was not taking the place of a regular teacher absent on leave.*

We have deliberately underscored the word "or'' in our quotation from § 111-2304, OCLA, in order to focus attention upon the prime point of disagreement

between the parties. Plaintiff contends that the word should be read literally with its normal disjunctive connotation. The defendant district, on the other hand, argues that it should be given a conjunctive import by reading it as if it were the word "and".

If we read the word "or" literally, then it becomes evident that permanent status is acquired by a teacher in one of two alternative ways. However, if we are compelled to give the word "or" the meaning of "and", then a teaching record of three successive years does not ripen into permanent status until the school board adopts a resolution as provided in § 111-2307 of the tenure act. This construction urged upon us by the defendant district is tantamount to saying that all teachers initially and regularly employed by the district must be first employed as "probationary" teachers who can never graduate from their initial probationary standing to permanent status until they have first served the required three successive years and won the board's accolade in the manner provided by § 111-2307, OCLA.

■■ Courts should exercise circumspection to avoid any effort to amend statutes. There is no justification for using "or" as meaning "and", unless the failure to do so would leave a statute meaningless or absurd. It is an inexcusable device of interpretation where there is no ambiguity to be resolved. Generally, the words "and" and "or", as used in statutes, are not interchangeable, being strictly of a conjunctive or disjunctive nature, respectively; and their ordinary meaning will be followed if it does not render the sense of the statute dubious or circumvent the legislative intent, or unless the act itself furnishes cogent proof of the legislative error. *State v. Kelly,* 218 Minn 247, 15 NW2d 554, 162 ALR 477, 490; *Tedars v. Savannah*

*River Veneer Co.,* 202 SC 363, 25 SE2d 235, 147 ALR 914, 919; 50 Am Jur, Statutes, 268, § 282; 82 CJS, Statutes, 672, § 335.

■ Taking the tenure law by its four corners, we do not find § 111-2304, OCLA, rendered ambiguous, meaningless or absurd by the legislative use of the controverted word "or" in its usual meaning and disjunctive employment and cannot accept defendant's suggestion that we substitute "and" in place thereof and thereby give a conjunctive character to the phrase which follows; nor do we think the foregoing conclusion is violative of the legislative intent. Indeed, if we accept defendant's premise, it is plain to us that we must also conclude that *all* teachers who are regularly appointed and employed by a school district must be initially employed on a probationary basis (except, of course, substitute teachers) and that *all,* after three years of such service, must thereafter be subjected to board review of their records required by § 111-2307 before they can successfully attain permanent status.

We do not so read the tenure law. We find nothing therein which inhibits a school district from regularly employing any teacher without first subjecting such instructor to a probationary period. The word "teachers", as used in the act, comprehends the whole gamut of instructors from the elementary school to those presiding over high school classes. Within the statutory definition of the word "teacher" is also included high ranking administrative employees: supervisors, principals, vice-principals and directors. § 111-2304, OCLA. Offices with such administrative responsibility are ordinarily assigned only to those who have proved their worth through long prior experience. To hold, as defendant would have us do, that all "teachers" must first submit to three years of probationary test-

ing would deny to the school board the valuable opportunity to choose from many experienced men and women with well established reputations in their profession but who might hesitate to accept appointment because of their unwillingness to subject themselves to the vicissitudes and uncertainties of probationary employment. § 111-2306, OCLA.

The earlier counterpart of § 111-2306, (as it was originally enacted in 1935) and its immediate predecessor as legislation treating with the same subject matter, was § 35-2603, Oregon Code 1930, a part of the tenure law enacted in 1913. Section 35-2603 expressly directed that "The teachers employed in any such district or districts during their first two years of service shall be classed as probationary teachers." This mandate of the 1913 tenure act would give cogent substance to defendant's argument if it or its equivalent could be found in the later tenure law of 1935, which supplanted in its entirety the act of 1913.

■ The inclusion of the controverted provision of § 111-2304, OCLA, as presently drawn, coupled with the deletion of the inflexible mandatory direction compelling probationary employment as originally written into § 35-2603, is in our opinion clear and conclusive evidence of the legislative intent to vest district school boards with powers of a discretionary latitude whereby the services of some teachers might be retained without subjecting them to the incident uncertainties of probationary status and thereby enlarging the field from which teachers of proven ability and experience can be chosen.

■■ With no statutory mandate dictating that all teachers employed by the district must be placed on a probationary basis for three years, it follows that a school board can create two alternative kinds of "regu-

lar teacher'' employment: (1) Those who are not subjected to probationary status and (2) those who are. All thus regularly employed must, of course, serve at least three successive school years before attaining eligibility for permanent tenure; but only those who are on probationary status are subjected to the district board's favorable resolutions before their permanent status is finally determined. To hold otherwise would be to circumvent what appears to us as the legislative intent.

■ In order to enjoy permanent status under the tenure law, it is unnecessary for plaintiff to prove that she was first placed on probationary status and thereafter elevated to permanent status pursuant to a resolution provided for by § 111-2307 OCLA, if she can show that she was a regularly employed teacher for three successive school years and not engaged during that time as a substitute temporarily employed during the absence of other regularly employed instructors.

Notwithstanding the foregoing conclusion, we still have before us the necessity of disposing of the second question propounded by this appeal, i.e., deciding whether plaintiff was a regularly employed teacher in contradistinction to employment as a probationary teacher or as a substitute.

No contention is made by the district that she was on a probationary status during the school years in question. To the contrary, defendant insists that she was only a substitute teacher during that time or, as it describes her, an ''assigned substitute''.

Sections 111-2304 and 111-2305, OCLA, respectively incorporate and expand the fundamental thought initially enacted by ch 152, § 3, Oregon Laws 1917, and by ch 37, § 2, Oregon Laws 1913. Concerning the acts of 1913 and 1917 last referred to, this court held in *Tag-*

*gart v. School District No. 1,* 96 Or 422, 435, 188 P 908, 1119, that they had no application to substitute teachers; and we now, and for the same reasons there given, so hold with reference to the present Teachers' Tenure Law of which §§ 111-2304 and 111-2305 are integral parts. It follows, therefore, that if plaintiff was employed as a teaching substitute in the legal or common acceptation of that term, she has no standing here. If, however, plaintiff's services were rendered as a regularly employed teacher not retained on a probationary basis, then the appellation "substitute" loses its ordinary connotations and does not stand as a bar to such rights as plaintiff is entitled to claim under the tenure law.

It is defendant's contention that during all the teaching periods here involved, plaintiff's status was that of an "assigned substitute", a term not included in the nomenclature of the tenure law. The claim rests upon a like phrase used in the contracts made with plaintiff for the teaching years beginning respectively in 1943, 1944 and 1945.

█ In the absence of a statutory or judicial definition, the true nature of the employment should be determined by an examination of its characteristic constituent elements and not as defined by a descriptive word or phrase arbitrarily applied. This is particularly true when the descriptive words so used in and of themselves suggest a meaning wholly at variance with the distinctive qualities of that particular service. In short, the test is what the plaintiff did, not what she was called.

At the threshold of this line of argument, the defendant district is confounded with its stipulation to the effect that plaintiff was employed on a substantially full-time basis during these three controlling school

years and, while so engaged, was not taking the place of a regular teacher absent on leave.

The word "substitute", although used in the tenure act, is not there defined, nor has this court heretofore had occasion to define it judicially. This omission is not strange, because of its generally accepted and long familiar meaning to all who have ever attended a school. However, we have made reference to persons in that status as being "substitute teachers temporarily employed" and substitute teachers who are "employed to take the place of another teacher for a week or a day". *Taggart v. School District No. 1,* supra, at 435. These phrases comport with both the academic and legal acceptation of the word "substitute" as one who takes another's place in case of the latter's absence. *Schulz v. State Board of Education,* 132 NJL 345, 40 A2d 663, 669; Webster's New International Dictionary (2d ed).

We are told by the respondent district that the words "assigned substitute" are words of administrative convenience with no foundation in law and that, as so used by School District No. 1 here, they can mean, among other things, persons "substituting in a temporary position for which there is no regular teacher."

Whether plaintiff was serving in a "regular" or "temporary" position and what constitutes a "regular position" as distinguished from a "temporary position" are matters not before us nor necessary for determination in this decision; but we do note that the test of tenure for teachers under the present law is not made contingent upon the kind of position they are selected to fill, that is, regular or temporary, but rather upon the regularity of their employment, if not probationary, and the successive years of such employment. So far as the tenure act is concerned, teachers' claims to permanent status cannot be impaired by the

fact that they are assigned to teach courses which, for administrative convenience, the school board may treat as experimental or temporary courses. Permanent status does not, however, impose upon the district a duty to employ continuously a teacher with that rating when the board determines, in the exercise of good faith, that such employee's services must be discontinued because of the demands of economy or by reason of a lack of pupils. *Funston v. District School Board, Etc.,* 130 Or 82, 90, 278 P 1075, 63 ALR 1410.

If it should appear to the school board that it should be vested with power to accomplish what it is apparently attempting to do, that is, avoid an overloading of its permanent teacher rolls while speculating on the continuance of a given teaching course, then we submit that it should seek relief from the legislature rather than by arbitrarily attempting to circumvent the tenure law by the employment of phrases designed to cover conditions not expressly excepted from the operation of that law.

We have no occasion to impugn the integrity or good faith of the board in its apparent eagerness to save the district additional expense incident to an overloading of the permanent teacher rolls; but we submit that the device here employed to avoid such a situation, if, in fact, such was its objective, is fraught with grave dangers and can, unless condemned, become a wicked instrumentality in the hands of school officials unfriendly to the tenure law.

Our answer to the second question is that plaintiff during the several school years was not acting as a substitute but in a capacity as regular as any regularly employed teacher and that the use of the words "assigned substitute", as applied to her, does not work

to destroy or temper her rights under the tenure act, unless it can be said that she was not "regularly appointed and employed" during her three successive years of service in the sense that it challenges the legal sufficiency of the formalities of her contracts.

The defendant district makes the formality of the execution of plaintiff's contracts an issue in this matter and thereby injects a challenge to the power of the school district to ratify subsequently a previous contract irregularly executed, notwithstanding that the agreement had the character of one which the district had the power to authorize in advance.

The facts upon which the defendant district depends are substantially as follows: For the school year 1943-44, the board by resolution directed a contract in letter form wherein the teachers to be employed were described as "assigned substitutes". Plaintiff was mailed such a contract, accompanied by a covering letter setting forth the terms of the employment for a full school year. Both the letter and contract were signed by one of the district's assistant superintendents—and the contract by the plaintiff. The salary schedules referred to therein were established by a motion recorded in the minutes of the board. Thereafter, plaintiff was paid in accordance with such schedules by warrants signed by the chairman of the board and its school clerk.

Substantially the same procedure was followed for the school years 1944-45 and 1945-46, with the exception that there was no resolution directing the form of contract to be used. Notwithstanding, a form of contract similar to that authorized in 1943 was used in the two subsequent years, and plaintiff received warrants in payment for services in accordance with the salary schedules adopted for those years. They were signed

by the same officials who had signed the warrants for 1943-44.

Section 111-1041, OCLA, provides for the formalities of making teaching contracts and, insofar as pertinent, reads:

> "The board, at a general or special meeting called for that purpose, shall hire teachers and shall make contracts with such teachers which shall specify the wages, number of months to be taught and time employment is to begin, as agreed upon by the parties, and shall file such contracts in the office of the district clerk. * * * When a teacher is hired at a regular meeting and such action is spread upon the minutes, any contract signed afterward in conformity therewith by the chairman, clerk and teacher shall be binding upon all parties."

Ratification is claimed by plaintiff by reason of the payment for her service in full for the several years she functioned pursuant to the contracts made. The defendant disclaims power in itself to ratify contracts of the kind made with plaintiff. In support of its position, it relies heavily upon *Taggart v. School District No. 1*, supra, 96 Or 422 (1920). Contrariwise, the plaintiff asserts that the controlling law is found in *Graham v. School District*, 33 Or 263, 54 P 185, an opinion written by Mr. Justice WOLVERTON in 1898.

It is an item of interest, although not of controlling character in the instant matter, to note that if the premise of defendant in this respect is correct, then a host of Portland teachers may discover that they have been serving under invalid contracts with the incident of possible jeopardy to such future claims as they may make under the tenure law, for the particular form of contract employed in the retention of plaintiff's services was designed by the board's resolution to be used for all of Portland's "assigned substitutes".

■ The pertinent words of Justice WOLVERTON in the Graham case emphasized by the plaintiff read (33 Or 266):

"But school boards are not unlike the governing boards of other municipalities and corporations, and may by their subsequent acts so adopt or ratify contracts within the scope of their powers, informally entered into or executed, that the districts for which they act will be estopped to deny their validity. * * *"

That part of the Taggart case to which defendant points with a confident assurance was written by Mr. Justice BENNETT in response to a petition for rehearing in that matter and states (96 Or 437):

"The brief of this petitioner urges very strenuously that, even if the appointment of the plaintiff was irregular, yet that it was not entirely void, and that it could be and was ratified by the acceptance of plaintiff's services, and many authorities are cited to support the contention that after she had taught, and the district had accepted her services, she could recover for the same, upon the theory that the contract was ratified by the district. Even if we assume that this is the law, it would not help the plaintiff in this proceeding, for she would still not be a 'regularly' appointed teacher [i.e., a substitute]. There are many irregular acts and proceedings which are still valid—or may be made valid—validity is one thing, regularity quite another. The legislature has chosen to make regularity, not validity, the test."

What at first appears to be a sharp diversity between these two opinions loses much of its force and effect when we make a critical study of the Taggart case. That case was a proceeding in mandamus designed to compel the restoration of Mrs. Taggart to her position and employment as a teacher in the Portland schools. Her claim was predicated upon the theory

that her prior service as a teacher entitled her to the protection of the tenure law then in effect and that she was entitled thereto despite the fact that her entire teaching service was as a substitute for a regularly employed teacher who was absent from her position by reason of illness and despite the further fact that Mrs. Taggart's entire period of employment rested upon an oral contract made between her and the superintendent of schools of that city. This court in that opinion, as we have earlier observed, held that as a teacher substituting in the place of a regularly employed teacher, she was not entitled to the benefits of the tenure law. It is apparent from a reading of that opinion that what the court thereafter said concerning the power of the school board to ratify an irregularly made contract was unnecessary and contributed nothing to the result there reached, for the reason that, had Mrs. Taggart's employment been evidenced by a contract executed with all the formalities of law, she still would not have been entitled to claim a place on the permanent rolls under the tenure act. It follows, therefore, that the statement in the Taggart case relied upon by the defendant district is dictum and, ipso facto, loses much of its persuasive force, particularly when read with the doctrine of contract ratification laid down in *Graham v. School District*, supra.

The rule of ratification announced in the Graham case is well established in its application to the contracts of school districts. 47 Am Jur, Schools, 331, § 50; Hamilton and Mort, The Law and Public Education, 284-85, 330-31; Voorhees, The Law of the Public School System, 127, § 58.

This court has never cited the Taggart case as authority for the proposition advanced by the defendant in the intervening 30 years since its initial pronounce-

ment. To the contrary, since the decision in the Graham case we have repeatedly recognized the right of ratification of irregularly executed contracts as therein expounded and have many times applied it to irregularly executed contracts made by other public or municipal entities of this state. See *Mount v. Welsh et al.,* 118 Or 568, 587, 247 P 815 (a contract for a post-mortem examination); *McKenna v. McHaley,* 67 Or 443, 447, 136 P 340 (a county contract for the services of a deputy district attorney); *Cunningham v. Umatilla County,* 57 Or 517, 519, 112 P 437, 37 LRA NS 1051 (a county contract for detective services); *Steiner v. Polk County,* 40 Or 124, 125, 66 P 707 (a county contract for professional services).

▮ Assuming that a school board has authority, in the first instance, to make contracts of the kind challenged on the ground of irregular execution, the public is not thereby deprived of any substantial protection by the board's subsequent ratification. It is our conclusion that the power of ratification so extensively discussed and properly applied in *Graham v. School District,* supra, should prevail over what is said as dictum concerning the same subject in *Taggart v. School District No. 1,* supra, and we so hold.

The order of nonsuit will be reversed and the case remanded for a new trial.

PETITION FOR REHEARING

▮

*Randall S. Jones* and *Robert L. Weiss,* of Portland, argued the cause for appellant.

*Grant T. Anderson* argued the cause for respondent. On the brief were King, Miller, Anderson, Nash & Yerke, of Portland.

WARNER, J.

Upon petition of the defendant school district a rehearing was granted. It was predicated upon the proposition that the court erred in the original opinion in construing the Teachers' Tenure Law (ORS 342.205 to 342.330) in such a way as to create a class of regular teachers, neither "permanent" nor "probationary", who would attain tenure status automatically at the end of their third year of employment.

To sustain this contention the school district advanced a thesis so casually and indifferently presented in its first brief, and never exploited in its initial oral argument, that we may appropriately say that it now comes to us in the form of a first presentation. Its persuasive force is materially aided by the respondent's forthright acceptance of our holding that the word "or", appearing in the statute, is there used in its literal and disjunctive sense rather than in a conjunctive character, as so earnestly urged in the school district's first brief and thereafter contended for with equal zeal at the first oral presentation. Had not counsel's first argument so depended upon our acceptance of the meaning which he then assigned to the word "or", we doubt if this petition for rehearing would have been necessary. We are indebted to both appellant and respondent for the comprehensive briefs now furnished and their able arguments made at the last hearing.

The respondent now contends that the phrase in the first clause of § 111-2304, OCLA (ORS 342.210) reading, "have been regularly appointed and employed * * * for not less than three successive school years" indicates that this clause was intended to oper-

ate retrospectively and not prospectively, as argued by the appellant.

█ To fully appreciate the legislative intent and meaning encompassed in § 111-2304, we are compelled to give consideration to the entire act of 1935 (Oregon Laws 1935, ch 125). This persuades us that the proper construction of the first clause of the second sentence of § 4—a construction which avoids the objections and anomalies which, as we later point out, result from the court's original decision, and which makes a harmonious whole of all the separate provisions of the statute—is that it was intended to apply retroactively to teachers who, before the effective date of the new act, had been regularly appointed and employed for not less than three successive school years. This meaning clearly appears when the whole sentence is read: " 'Permanent' teacher or teachers shall mean and include all teachers *who have been* regularly appointed and employed by any such school district for not less than three successive school years, or *who may hereafter* be placed upon the permanent list by resolutions of the school board as hereinafter provided." (Italics ours.) The change from past tense in the first clause to future tense in the second clearly indicates that, while the second clause refers to something that will occur after the effective date of the act, the first clause refers to something that has already occurred.

█ The 1935 act repealed the prior law and wiped out tenures acquired under it. *Campbell v. Aldrich,* 159 Or 208, 79 P2d 257; cases collected in 147 ALR at p. 299. The evident purpose was to give the same benefits to teachers who had previously served three years as to those who should thereafter serve for three years, omitting, however, the requirement of a resolution

of the board of directors. This would be by way of compensation for the loss of rights previously acquired.

The first teachers' tenure act was passed in 1913. General Laws of Oregon 1913, ch 37. It applied to school districts having a population of 20,000 or more persons. Section 3 provided that teachers "during their first two years of service shall be classed as probationary teachers" and authorized the board of directors to dismiss a teacher at any time during the probationary period "upon cause deemed sufficient by the board". Section 4 provided: "Teachers who have been employed in the schools in any such district or districts as regularly appointed teachers for not less than two successive annual terms shall by the board of directors be placed upon the list of permanently employed teachers." Teachers upon the permanent list were not subject to annual appointment but continued to serve until dismissed or discontinued by the board in the manner provided in the act.

This act was revised by General Laws of Oregon 1917, ch 152, which retained substantially the provisions of the 1913 act to which we have referred. It was again revised in 1935. Oregon Laws 1935, ch 125. The provisions of this act repeal the prior legislation and govern the present controversy. Two subsequent amendments are not pertinent to the question under consideration. See Oregon Laws 1939, ch 113; Oregon Laws 1945, ch 137. The act is found in OCLA, Title 111, ch 23, and ORS 342.210 to 342.330. In this opinion we shall refer to the 1935 act. In each instance, italics used are our own.

The title of the act reads:

"Providing the manner in which *all teachers,* instructors, officers, agents and/or employees of

school districts in this state, having a population of 20,000 or more persons, shall be appointed, employed, classified, compensated, retired, dismissed, removed, discharged, transferred and/or demoted, and for the repeal of chapter XXVI, title 35, Oregon Code 1930, as amended."

Section 3 reads:

"The board of directors of any such district shall have the power and authority to appoint, employ, and to classify and/or fix the salaries or compensation of *all teachers* employed, or to be employed, by said district; and in the manner hereinafter provided, and *in that manner only,* shall have power and authority to appoint, employ, retire, dismiss, remove, transfer and/or demote *any such teacher.*"

Section 4 reads:

"The words 'teacher' or 'teachers' when used in this act shall mean and include all supervisors, principals, vice principals and/or instructors now employed, or who hereafter may be employed, by any such school district. 'Permanent' teacher or teachers shall mean and include all teachers who have been regularly appointed and employed by any such school district for not less than three successive school years, or who may hereafter be placed upon the permanent list by resolutions of the school board as hereinafter provided. 'Probationary' teacher or teachers shall mean and include all teachers other than substitute teachers, regularly appointed and employed by any such school board during a probationary period of three successive school years, and until placed upon the permanent list as provided in section 7."

Section 6 reads:

"Any such board shall have power and authority to discharge and/or remove any probationary

teacher in its employ, at any time during his or her probationary period for any cause deemed sufficient by the board. Transfer or demotion of any such probationary teacher may be made at any time by the board when deemed for the good of the service; provided, however, that in the event of friction between any such teacher and his or her principal, the board shall grant said teacher the privilege of serving under another principal before taking any formal adverse action. Said board may, when it deems such action for the good of the service, refuse to renew the contract of any probationary teacher, or re-employ any such teacher when not under contract, but such teacher shall be entitled to at least ten weeks' notice of the intended action of said board before expiration of his or her contract and/or before the end of the school year.''

Section 7 reads:

''Probationary teachers who have been employed in the schools in any such district or districts as regularly appointed teachers for not less than three successive annual terms, if retained, shall be placed by the board of directors upon the list of permanently employed teachers; provided, that any such teacher shall not be placed upon such permanently employed list until the board upon consideration of records and ratings, to be regularly and periodically made to the board, is satisfied as to qualifications and adopts a resolution transferring such teacher from the probationary list to the permanently employed list.''

Section 8 contains this provision:

''Permanent teachers shall not be subjected to the requirement of annual appointment, but shall continue to serve until retired, dismissed or discharged as provided hereinafter; provided, however, that such teachers shall at all times be sub-

ject to temporary suspension under such reasonable rules and regulations as may be prescribed by the board.''

Section 9 has to do with the transfer of a permanent teacher from a position in any branch of the service to another position in the same branch of the service. Section 11 contains provisions relative to recommendations by the superintendent as to the dismissal, transfer or demotion of a teacher and forbids dismissal of a permanent teacher except for certain specified causes. Sections 12 to 16 and § 18 prescribe the procedure for the hearing of charges against a permanent teacher. Section 20 provides for the retirement of teachers at the age of 65 years.

■ The 1935 act is a complete law governing the subject of the tenure of teachers in the school districts to which it is applicable. It applies to *all* teachers in such school districts. This appears both in the title and in the body of the act. Section 3 empowers the board to employ, classify and fix the salaries of *all* teachers, and authorizes the board to ''appoint, employ, retire, dismiss, remove, transfer and/or demote any such teacher'' only in the manner thereafter provided in the act. In § 6 provisions are made for the discharge, removal and transfer or demotion of *probationary* teachers. Section 8 provides for the continuance in service without requirement of annual appointment of *permanent* teachers; § 9 for the transfer; and § 11 for the dismissal of *permanent* teachers. The procedural provisions of §§ 12 to 16 and § 18 all concern *permanent* teachers.

Since provisions of the act touching the appointment, employment, retirement, dismissal, transfer and demotion of teachers are expressly made applicable

to *all* teachers of the district; and since the school board is authorized to perform these functions in the manner prescribed by the act and in no other manner; and since the act prescribes how these duties are to be discharged with respect to two classes of teachers and two only, namely, probationary and permanent, it follows that this court in its first decision adopted a construction of § 4 which is in direct conflict with the clear legislative intent, for the plaintiff, during the three years of employment upon which she relies to establish her right to permanent status, was, according to that construction, neither a probationary teacher nor a permanent teacher.

█ She asserts in her brief that she was not a probationary teacher within the meaning of § 7, and we agree. Of course, she could not on any theory have become a permanent teacher until she had served three successive years. Consequently, there is not a single provision of the act which could be applied to the plaintiff during this three-year period, because by express language all its provisions are made to apply either to probationary teachers or to permanent teachers, and she, we are told, was neither.

█ It is the duty of the court to give effect to the whole of the statute when endeavoring to determine the meaning of a particular provision and, if possible, to reconcile seemingly inconsistent provisions and bring them into harmony one with another. *Anthony v. Veatch,* 189 Or 462, 502, 220 P2d 493, 221 P2d 575; *Portland v. Duntley,* 185 Or 365, 380, 203 P2d 640; *Hunter v. Cunning,* 176 Or 250, 285, 154 P2d 562, 157 P2d 510; *Union Pacific Railroad Co. v. Bean,* 167 Or 535, 549, 119 P2d 575.

In *Anthony v. Veatch,* supra, Mr. Justice HAY, speaking for the court, after stating the rule that a

court is required in the interpretation of a statute to give it such construction as will, if possible, give effect to the whole of it, quoted with approval this language from *Driscoll v. Klamath County,* 122 Or 515, 518, 259 P 915:

" 'The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition—construe it with reference to the leading idea or purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every other part or section and so as to produce a harmonious whole. It is not proper to confine the attention to the one section to be construed.' "

The following from Endlich, Interpretation of Statutes, 250, § 182, applies to this case with peculiar force:

"An author must be supposed to be consistent with himself; and, therefore, if in one place he has expressed his mind clearly, it ought to be presumed that he is still of the same mind in another place, unless it clearly appears that he has changed it."

We quote again the second sentence of § 4 which gives rise to the controversy, italicizing some of the words: " 'Permanent' teacher or teachers shall mean and include all teachers who *have been* regularly appointed and employed by any such school district for not less than three successive school years, or who *may hereafter be* placed upon the permanent list by resolutions of the school board as hereinafter provided." If the disjunctive "or" bears its ordinary meaning and the first clause of the sentence is given prospective application, it does indeed appear to create a third class of teachers, i.e., permanent teachers who

become such automatically after three years of service and who were never probationary teachers. The other two classes would be probationary teachers and permanent teachers who acquire permanent tenure pursuant to the provisions of § 7.

To accept this meaning of the statute introduces an element of unreasonableness, for what reason can be suggested for including in a *tenure* statute a class of teachers wholly unaffected by the provisions which relate to their dismissal, transfer or demotion?

The 1939 revision evinces a clear intent to tighten, rather than relax, the requirements for permanent tenure. The probationary term is increased from two to three years and a resolution of the board, based upon an examination of the teacher's records and ratings, is required before the teacher can be transferred to the permanent list.

The plaintiff's contention runs contrary to the basic theory of teachers' tenure laws. The Supreme Court of Minnesota in an opinion reviewing the history of the tenure movement said, "the objectives sought have been to protect the teachers against unjust removal *after having undergone an adequate probationary period.*" (Italics ours.) *McSherry v. City of St. Paul,* 202 Minn 102, 277 NW 541. A well-documented article upon the subject in 17 Mich L Rev 430 (1938-1939), states that tenure was then in force in 19 states and the District of Columbia, and continues: "Although varying in specific details, the general pattern of these laws may be described briefly. *For a period ranging from one to five years, the teacher is on probation* and during that time he may be denied reemployment at the end of any school year, but dismissal during the year must be for cause." (Italics ours.) Also see 78 CJS 1010, Schools and School Districts § 180; Pro-

ceedings of the 59th Annual Meeting of the National Education Association, p. 149; Research Bulletin of the National Education Association, September 1936, p. 175. However, even though it were considered not unreasonable for the legislature to abolish the probationary period and to provide for permanent tenure from the beginning, it would be highly unreasonable to enact a law under which some teachers, to be selected by some unknown process, become entitled to the benefits of such a provision while others are denied them. Unless absolutely driven to it by language which admits of no other interpretation, such an interpretation should not be adopted.

■ As against the construction which we think is the correct one, the general rule is invoked that statutes are to be given prospective application unless an intention to make them retroactive is clear. This court in *State ex rel. Pierce v. Slusher,* 119 Or 141, 150, 248 P 358, approved the following statement of the rule from Twenty Per Cent Cases, 20 Wall 187, 22 L ed 339: "* * * courts will apply new statutes only to future cases, *unless there is something in the nature of the case* or in the language of the new provision which shows that they were intended to have a retroactive operation." (Italics ours.)

Again, in *Denny v. Bean,* 51 Or 180, 184, 93 P 693, 94 P 503, we said:

"The rule under consideration, however, is only a guide where the intention of the legislature is obscure: Broom's Legal Maxims, 27. If the intention of the legislature is obvious and plain, it must prevail; but if it is obscure and doubtful, it should not be given a retrospective construction, although within the wording of the act, if such construction impairs existing rights, creates new

obligations, or imposes more duties with respect to past transactions, unless such plainly appears to be the intent of the Legislature: Sutherland, Statutory Con. § 643.''

Respecting the reason of the rule, it is said in Endlich, Interpretation of Statutes, 362, § 271: ''Upon the presumption that the legislature does not intend what is unjust rests the leaning against giving certain statutes a retrospective operation.'' And again at p. 367, § 273: ''It is chiefly where the enactment would prejudicially affect vested rights, or the legal character of past transactions, that the rule in question prevails.''

The effect of giving a retrospective operation to the disputed language would be merely to confer a benefit which would otherwise be withheld from a class of teachers who, it may be assumed, the legislature considered had already earned the right to permanent tenure. It works no injustice and disturbs no vested rights. It not only accords with the grammatical construction of the sentence, giving due weight to a change of sense indicated by a change in language, but it removes the contradictions and inconsistencies created by the court's construction. It is a result called for by ''the nature of the case''.

■ The brief of the plaintiff on rehearing calls particular attention to the word ''shall'' in the phrase '' 'permanent' teacher or teachers *shall* mean and include'' and argues that ''shall'' is language of the future. This is true, but irrelevant. Section 4 is a statute of definition and, of course, the definitions are to be applied prospectively. That would be so if the word ''shall'' were omitted. However, a definition to operate in the future may bring within its sweep

persons or things because of past events or transactions, as if a law should read "Lawyers shall mean and include every person who has passed the bar examination or who may hereafter graduate from a law school." The definition would be prospective, but those who had passed the bar examination theretofore would nevertheless come within it.

Insofar as the first decision gave a construction contrary to what we have hereinabove said, it is withdrawn. We continue, however, to cleave to that part of the earlier opinion which relates to the subjects of "substitute teachers", "assigned substitutes" and the ratification of teacher contracts.

The judgment of the circuit court is therefore affirmed.