IN THE OREGON TAX COURT
REGULAR DIVISION
Corporation Excise Tax

| | | |
|---|---|---|
| ABC INC. AND COMBINED AFFILIATES, | ) ) ) | |
| Plaintiffs, | ) | **TC 5431** |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | **ORDER DENYING DEFENDANT'S OBJECTIONS TO PLAINTIFFS' FORM** |
| Defendant. | ) | **OF JUDGMENT** |

## I.      INTRODUCTION

As required in net income tax cases, Plaintiffs fully paid the assessed tax, penalty and interest before the deadline for filing their complaint.  *See* ORS 305.419.[1]  After the court granted Plaintiffs' motion for partial summary judgment, the parties successfully negotiated a resolution of their remaining differences stemming from Defendant's audit, including agreement on which affiliates engaged in "interstate broadcasting" during the years at issue, and how to compute the amount of refund owing to Plaintiffs.  However, a new issue arose as the parties attempted to agree on a form of judgment:  the parties now are divided over how to interpret ORS 305.222(1), a statute specific to Defendant that imposes an enhanced rate of interest if Defendant fails to pay a court-ordered refund within 60 days after entry of judgment.[2]  The

---

[1] References to the Oregon Revised Statutes (ORS) are to the 2023 edition unless otherwise indicated. References to this court's rules (TCR) are to the 2025 edition.

[2] ORS 305.222(1) does not use the term "judgment," referring instead to the "date of the order," and the "date the order is entered."  Defendant asserts, and Plaintiffs do not dispute, that the 60-day period is measured from the date of entry of a judgment of this court or an appellate judgment of the Oregon Supreme Court because only a

question is which court's judgment--as between this court and the Oregon Supreme Court if the case is appealed--starts the running of the 60-day period.

ORS 305.222(1) (emphasis added) provides:

"In the case of a refund of tax ordered by the Oregon Tax Court or the Oregon Supreme Court and arising under any law administered by the Department of Revenue, if the refund is not paid by the department *within 60 days after the date of the order*, the interest rate provided under ORS 305.220 shall be *four percent greater* than the annual interest rate provided under ORS 305.220, but only with respect to interest periods that begin 61 days after the date the order is entered."

Plaintiffs submitted a proposed form of judgment that includes the following provision:

"Post-judgment interest shall be owed on the entire money judgment at the rate established under ORS 305.220 beginning the date this judgment is entered. In addition, the increase in the rate established under ORS 305.220 described in ORS 305.222(1) shall apply to any unpaid portion of the money judgment beginning 61 days after this judgment is entered."

(Ptfs' Proposed Form J, May 15, 2025.) Defendant objects on the ground that,

"[c]orrectly read, ORS 305.222(1) prescribes that [enhanced] interest only begins 61 days after the entry of a final, non-appealable order of either this court (i.e., if no further appeal to the Supreme Court is filed or available) or of the Supreme Court (if an appeal to that forum is timely filed)." (Def's Obj Ptfs' Form J at 1, ¶ 3.f.) Defendant has

---

judgment is enforceable. (*See* Def's Obj to Ptfs' Form J at 3.) This court agrees that, as to its own proceedings, the 60-day period in ORS 305.222(1) is measured from entry of a judgment, not from issuance of an earlier order or other expression of the court's decision, because the judgment is the "concluding and final decision of the court on one or more requests for relief" (TCR 67 A(1)) expressing the "final decision[ ] and final order[ ]" from which a party may appeal to the Supreme Court (ORS 305.445)). Although ORS chapter 18 does not apply to this court, the definition of a judgment in this court's rules thus closely mirrors the definition for a circuit court in ORS 18.005(8) as "the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document." *See* ORS 18.025 (ORS chapter 18 applies to "circuit courts, municipal courts and justice courts and to county courts performing judicial functions"). The close match is not accidental, but rather complies with the mandate in ORS 305.425(3) that this court's rules and procedures "conform, as far as practical to the rules of equity practice and procedure in this state." And by that token this court's judgment, upon entry, "[b]ecomes the exclusive statement of the court's decision in the case" and "[m]ay be enforced * * *." ORS 18.082(1). This court finds it unnecessary at this stage to parse the meaning of "order" as to any pronouncement of the Supreme Court, nor does the court decide that any order of this court, of any kind or character, must be reduced to judgment before it can be enforced. *See, e.g.,* TCR 78 B (governing contempt proceedings).

submitted its own form of judgment that would modify Plaintiffs' provision by adding the italicized text shown below:

> "Post-judgment interest shall be owed on the entire money judgment at the rate established under ORS 305.220 beginning the date this judgment is entered. In addition, the increase in the rate established under ORS 305.220 described in ORS 305.222(1) shall apply to any unpaid portion of the money judgment beginning *the later of* 61 days after this judgment is entered*, or 61 days after an appellate judgment affirming or modifying this judgment is entered*."

(*Id*. (italics added by the court).) The parties' respective forms of judgment do not otherwise differ materially.

The court agrees with Plaintiffs' interpretation of ORS 305.222(1), disagrees with Defendant's objections, and will enter judgment in the form submitted by Plaintiffs. The court reasons, applying *State v. Gaines,* 346 Or 160, 172, 206 P3d 1042 (2009):

- The relevant text is the phrase "refund of tax ordered by the Oregon Tax Court or the Oregon Supreme Court," and Oregon case law requires the word "or" to be read as disjunctive. As a result, the 60-day period commences the day after either court enters its order; normally, as here, this court will do so first.

- Statutory context, in particular ORS 311.812(2)(d), shows that when the legislature has chosen to treat the second event in a disjunctive sequence as the triggering event, it has added phrases such as "if the order constitutes a final determination of the matter," or "the later of," or "whichever is the later." The absence of any such additional phrase in ORS 305.222(1) supports the normal, disjunctive reading above.

- The court gives little weight to the legislative history, because it includes statements by knowledgeable witnesses in direct contradiction to each other, with no indication whether legislators accepted the view of either witness.

## II.    ISSUE

Whether, in the event of an appeal of this court's judgment under TCR 67 A(1), the enhanced rate of interest under ORS 305.222(1) begins to apply 61 days after entry of (1) this court's judgment granting a refund or (2) a judgment of the Supreme Court granting a refund.

### III.    ANALYSIS

Because this is an issue of statutory interpretation, the court will apply the analytical framework set out in *State v. Gaines* and will consider the text, context, and any relevant legislative history. *See also* ORS 174.010 ("the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]").

A.    *Text of ORS 305.222(1)*

ORS 305.222(1) uses the word "or" to link two conditions or circumstances that trigger the enhanced interest rate (this court's order of a refund; the Supreme Court's order of a refund). Plaintiffs' proffered judgment language interprets "or" as disjunctive. If "or" is disjunctive, then the enhanced interest rate starts to apply 61 days after either condition is satisfied. Because, in practice, these two conditions arise sequentially (this court normally enters an order in a case before the Supreme Court does), then under Plaintiffs' interpretation if this court enters an order for a refund, the enhanced interest rate starts 60 days after this court's order regardless of any appeal.

Defendant's interpretation would require that "or" be disjunctive sometimes, but not always. Under Defendant's interpretation, if this court were to enter an order *denying* a refund claim, then "or" *would* operate disjunctively:  notwithstanding this court's order, if the Supreme Court were to order the refund, then the enhanced interest rate would start to apply 60 days after the Supreme Court's order. But "or" would *not* operate disjunctively if this court were to enter an order *granting* a refund claim:  under Defendant's interpretation "or" would then mean "and"; both courts would have to grant the refund claim before the 60-day period would start to run.

Although the Supreme Court has recognized some exceptions, the word "or" is generally interpreted as disjunctive. *See Lairmore v. Drake and Borough*, 185 Or 239, 246, 202 P2d 473 (1949) ("In construing the applicable statute, effect must be given to the 'coordinating particle that marks an alternative' namely the word 'or'."). In a closely analogous situation, the Supreme Court declined to construe two statutory conditions linked by "or" to mean that both conditions must be satisfied. *See Lommasson v. School Dist. No. 1*, 201 Or 71, 79, 261 P2d 860 (1954) (*Lommasson I*) (definition of "'permanent' teacher" as one employed not less than three successive school years "or" placed on permanent list by school board did not require teacher to both have served three years *and* have been placed on the list), *opinion withdrawn in part on reh'g,* 201 Or 71, 91 267 P2d 1105 (1954) (noting defendant's post-argument agreement with court's interpretation of "or" as disjunctive; considering defendant's alternative argument made on other grounds); *McCabe v. State*, 314 Or 605, 610-11 (1992) (citing *Lommasson I*).

The court concludes that the plain text of ORS 305.222(1) favors Plaintiffs' interpretation because Plaintiffs' interpretation consistently interprets "or" as disjunctive, and Defendant's does not.

B.    *Context*

    i.    ORS 305.222(3).

In theory, subsection (3) of the same statute should provide highly relevant context because it addresses the directly analogous situation of enhanced interest owed *to* Defendant on an assessment that the taxpayer has failed to pay after 60 days. *See e.g. State v. February*, 361 Or 544, 550-551, 396 P3d 894 (2017) ("Our consideration of context includes the structure of a statute as a whole."). Both subsections were included in the original version of ORS 305.222, and neither has been amended in a manner relevant to the issue here. *See* Or Laws 1987, ch 647,

§7. Unfortunately, subsection (3) ultimately is unhelpful because it uses "or" in the same way, with no more express guidance than found in subsection (1):

> "If the deficiency assessment is appealed to the Oregon Tax Court without prior payment of tax, then notwithstanding subsection (2) of this section, the increased rate of interest shall commence only for interest periods that begin 61 days after the date that the order of the Oregon Tax Court or the Oregon Supreme Court affirming the deficiency is entered."

ORS 305.222(3).[3]

Defendant argues that it has adopted a practice under subsection (3) of "not impos[ing] the higher interest rate against taxpayers until all of their appeals have concluded." (*See* Def's Obj Ptfs' Form J at 11.) Defendant "now asks this court [to] construe subsection (1) of ORS 305.222 to treat the department's payment of refunds the same." (*Id.*) While the court is inclined to agree that subsections (1) and (3) should be read consistently, Defendant's post-enactment practice of selecting one of two competing interpretations and applying that interpretation to both subsections does not reveal the legislature's intention, when passing the law, as to which interpretation it meant.

     ii.       ORS 311.812(2)(d): Property Tax Refunds.

---

[3] The original version of subsections (1) and (3) is not materially different:

"(1) In the case of a refund of tax ordered by the Oregon Tax Court or the Oregon Supreme Court and arising under any law administered by the Department of Revenue, if the refund is not paid by the department within 60 days after the date of the order, the interest rate provided under ORS 305.220 shall be one-third of one percent greater than that so provided under ORS 305.220, but only with respect to interest periods that begin 60 days after that date the order is entered.

"* * *

"(3) If the deficiency or delinquency is appealed to the department or in a hardship situation to the Oregon Tax Court without prior payment of tax, then notwithstanding subsection (2) of this section, the increased rate of interest shall commence only for interest periods beginning after a 60-day period after the date that the order of the department, the Oregon Tax Court or the Oregon Supreme Court affirming the deficiency or delinquency is entered."

Or Laws 1987, ch 647, §7.

Moving beyond the statute at issue, the court finds relevant context in another tax statute regulating the accrual of interest on refunds. *See e.g. State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes."). The two statutes are similar in that ORS 305.222(1) governs when to apply an enhanced rate of interest on income tax refunds, while ORS 311.812 governs when to apply any interest at all on property tax refunds.[4] ORS 311.812(2) (emphases added) lists the sole circumstances in which a county may be required to pay interest on a property tax refund:

"(2) Interest as provided in subsection (3) of this section shall be paid on the following refunds:

"(a) A refund resulting from the correction under ORS 308.242 (2) or (3) or 311.205 of an error made by the assessor, Department of Revenue or tax collector.

"(b) A refund resulting from a written stipulation of the county assessor or the county tax collector *if the written stipulation constitutes a final determination that is not subject to appeal.*

"(c) Any refund ordered by the Department of Revenue *if no appeal is taken or can be taken from the department's order.*

"(d) Refunds ordered by the Oregon Tax Court or the Supreme Court *if the order constitutes a final determination of the matter.*

"(e) Refunds of taxes collected against real or personal property not within the jurisdiction of the tax levying body.

"(f) Refunds due to reductions in value ordered by a county property value appeals board *where no appeal is taken.*

"(g) Refunds due to reductions in value made pursuant to ORS 309.115.

"(h) Refunds due to a claim for a veteran's exemption for a prior tax year that is filed pursuant to ORS 307.262."[5]

---

[4] As well as refunds of other taxes administered by Defendant, unless specifically provided by statute or rule. *See* ORS 305.220(1).

[5] At the time the legislature enacted ORS 305.222(1), the relevant portion of the property tax refund statute was materially the same as today:

"(2)     Interest as provided in subsection (3) of this section shall be paid on the following refunds:

ORS 311.812(2)(d), in particular, provides an example, in a similar statutory scheme, of language that the legislature could have used to accomplish the outcome that Defendant asserts the legislature intended under ORS 305.222(1). Particularly when read in the context of neighboring paragraphs (b), (c), and (f), the conditional phrase "if the order constitutes a final determination of the matter" appears to imply that interest is not imposed if this court's order potentially could be appealed to the Supreme Court, already is on appeal to the Supreme Court, or has been returned to this court on remand.[6] The fact that the legislature used an additional phrase in ORS 311.812(2)(d) to modify the simple disjunctive "or," yet chose not to insert any similar phrase into ORS 305.222(1), strongly implies that the legislature intended the simple, disjunctive meaning of "or" for which Plaintiffs contend in this case. *See Con-Way, Inc. & Affiliates v. Dept. of Rev.*, 353 Or 616, 302 P3d 804 (2013), *affirming* 20 OTR 417 (2011) (omission from statute of text found in other statutes demonstrates that the legislature did not intend the same result in the statute at issue).

---

"* * * * *

"(c)     Refunds ordered by the Oregon Tax Court or the Supreme Court *and the order constitutes a final determination of the matter*."

ORS 311.812(2)(c) (1985) (emphasis added).

[6] A search for relevant contemporaneous context readily reveals additional phrases that the legislature has commonly used to narrow the choice between alternative conditions, including referring to "the later of" one of them, or by adding after the list the phrase "whichever is later." *E.g.*, ORS 314.415(4)(b) (1987) (for purposes of computing interest on income tax refund under ORS 305.220, taxpayer's "overpayment" of tax, if resulting from the carryback of a loss from a later tax year, is deemed not to have been made before "the later of" three events); ORS 314.410(3) (1987) (Defendant's deadline to issue a notice of deficiency expires at the end of the usual limitations period "or" within two years after notice of a correction to the taxpayer's federal income tax return, "whichever period expires the later"); ORS 314.410(8) (1987) (Defendant's deadline to issue a notice of deficiency expires at the end of the usual limitations period "or" six months after any extended deadline agreed to between the taxpayer and the Internal Revenue Service, "whichever period expires the later").

C.        *Legislative History of ORS 305.222.*

Finally, the court examines the legislative history of the 1987 act that adopted

ORS 305.222, which ultimately proves unhelpful.  As this court has previously observed,

ORS 305.220 and ORS 305.222

> "were drafted as sequential sections of Senate Bill 100, which was passed in
> 1987.  Or Laws 1987, ch 647, §§ 6-8.  Committee discussions reveal that a
> concern about the high interest rates that were being applied to deficiencies
> prompted a last-minute rewrite of the two sections.  Minutes, House Committee
> on Revenue and School Finance, June 2, 1987, 6-7.  That rewrite implemented a
> two-tiered system of interest designed to lower the interest rate while also tying it
> to the rate used by the Internal Revenue Service.  *Id*.  The legislature also hoped
> that the bill would serve to promote the early payment of deficiencies.  *Id*.  The
> sections were written to work together; as written they result in an overall
> reduction in the interest rate on refunds and deficiencies while encouraging early
> payment by applying a higher interest rate to late payments."

*Thomas Creek Lumber & Log Co. v. Dept. of Rev.*, 19 OTR 259, 264 (2007), *aff'd*, 344

Or 131, 178 P3d 217 (2008).

At the June 5, 1987, public hearing on Senate Bill 100, Rick Peterson of the

Legislative Revenue Office gave the House Revenue and School Finance Committee an

initial overview of the then newly drafted "dash 17" amendments referred to in *Thomas*

*Creek Lumber*.  Following that initial explanation, Representative John Schoon asked

Peterson to explain the impact of an appeal from the Tax Court to the Supreme Court:

> Representative Schoon: "Okay my question is, if the refund is ordered by the Tax
> Court and there is some other process of appealing to the Supreme Court--I guess
> that could be the only place they could go--well then would the department be
> forced into making the refund or paying the higher rate while the case was still
> under appeal?  As this language is written here right now.
>
> Peterson: "* * * if the taxpayer wins at some point along the way the department
> is required to pay the refund, pay the money back.  Now the department could
> take it on, further on I suppose, I'm not sure that once you get to Tax Court you
> usually appeal too many things beyond the Tax Court, but the department could
> appeal beyond that, but they would have to pay the refund.  If they failed to pay,
> *say the person won at the Tax Court level, the taxpayer won at the Tax Court*
> *level, and the department still thought it was right and wanted to go on to the*

*Supreme Court the department would still be required to pay a refund. If they failed to pay that refund within 60 days then the interest rate the department would have to pay on the refund would go up by four percent.*

Rep. Schoon: *"Okay, is there any provision for holding that in abeyance if the case is appealed to the Supreme Court?*

Peterson: "*Not if the department loses.* If the taxpayer loses at the Tax Court level, in other words the Tax Court says that this taxpayer owes the refund, they can appeal to the Supreme Court and in subsection (3) on page 4 there. If the taxpayer had not already paid the tax because they got a hardship exception then they would continue not to pay it--or, let's see--they would still owe the tax if they'd lost at Tax Court but the interest running during that time would still be the lower rate of interest until the Supreme Court made a decision. And if the Supreme Court then ruled against the taxpayer, then the taxpayer would owe the tax and the interest at the lower rate for that full period. Okay. Until after the Supreme Court decision was made. And then once the Supreme Court decision was made the taxpayer owed the money, then interest from that point on would be higher."

Testimony, House Committee on Revenue and School Finance, SB 100, June 5, 1987, Tape 201, Side B at 2:45-5:15 (statements of Rick Peterson and Rep. Schoon) (emphases added). Rep. Schoon's follow-up question, "Does the department have any interest in wanting to hold off on making a payment and having the rate of interest increase because of subsequent appeal to the Supreme Court?" indicates that Rep. Schoon understood the bill, as written, to require payment of the refund and imposition of enhanced interest *prior to resolution of the appeal by the Supreme Court. Id*. at 5:45. Rep. Schoon's understanding corroborates this court's conclusion based on the statutory text and context. His inquiry appears intended to find out whether Defendant had any interest in amending the bill to change the result as articulated by Peterson.

Chair Hosticka then called on Jim Brown, a representative of Defendant, to respond to Rep. Schoon's question. Brown offered a substantially different interpretation:

"I think our interpretation of part 1 of section 13, in the case you mentioned where we would, the *Department of Revenue, loses the issue at Tax Court. The Tax Court*

*orders us to issue a refund.* I'm not an attorney, but this section says we have 60 days to issue that refund before we trigger into that higher interest rate. We also have that 60-day window to appeal to the Supreme Court. And I believe *if we appealed to the Supreme Court then that stays the order of the Tax Court pending that decision.* I don't know maybe we need to get some legal advice on that, but my assumption on the way this was drafted would be that under that situation that we would be in the same situation as the taxpayer and we would not start paying the higher interest until the Supreme Court then either upheld or overturned the order of the Tax Court."

Testimony, House Committee on Revenue and School Finance, SB 100, June 5, 1987, Tape 201, Side B at 6:00-6:50 (statement of Jim Brown) (emphasis added). Representative Jones then asked Brown a question about penalty interest under ORS 314.400 (1987). Testimony, House Committee on Revenue and School Finance, SB 100, June 5, 1987, Tape 201, Side B at 7:20 (statement of Rep. Jones). The committee held no further discussion of the "tier two interest" provision, and no further amendments to the related sections of the bill were proposed.

Brown's and Peterson's explanations conflict with each other. Brown's statement is consistent with Defendant's position in this case, while Peterson's statement is consistent with Plaintiffs' position. The committee heard both but, in the waning days of the session, did not amend the bill to clearly adopt either position. Nor does the available record reflect whether legislators agreed with either position, or whether any legal advice was given to legislators on the subject. This conflict greatly reduces the value to the court of each explanation.[7] Accordingly, the court assigns the legislative history very

---

[7] Furthermore, each of the two witnesses made significant misstatements. Brown misstated the number of days allowed to appeal from this court to the Supreme Court. *Id*. at 6:20 (statement of Jim Brown) ("We also have that 60-day window to appeal to the Supreme Court."); *cf.* ORS 19.026 (1985); ORS 19.255 (2023) (appeal window then, as now, was 30 days). This error has some significance because Brown relied on it when implying that the time allowed for appeal corresponded with the bill's 60-day period before the interest rate became enhanced. On the other hand, Peterson testified that the start date of the enhanced interest rate under ORS 305.222(1) was different from the start date under ORS 305.222(3). Although the operation of ORS 305.222(3) is not at issue in this case, the court sees no reason to interpret it differently from ORS 305.222(1), and the court therefore finds all of Peterson's statements suspect. *Compare id*. at 3:00 (statement of Rick Peterson) ("If they failed to pay, say * * * the taxpayer

little weight. *See Gaines*, 346 Or at 172–73 ("We emphasize again that ORS 174.020 obligates the court to consider proffered legislative history only for whatever it is worth-- and what it is worth is for the court to decide.") (footnote omitted).

## IV.    CONCLUSION AND ORDER

Based on the text and context of the statute, and after reviewing the legislative history, the court agrees with Plaintiffs that ORS 305.222(1) requires Defendant to pay the enhanced rate of interest beginning 61 days after entry of this court's judgment, regardless of whether that judgment is appealed. As a result, the court denies Defendant's objections and will enter judgment in the form submitted by Plaintiffs.

The court appreciates the attention given by counsel for both parties to briefing this question, which is a matter of first impression but has effects beyond this case. Now, therefore,

IT IS ORDERED that Defendant's Objections to Plaintiffs' Form of Judgment are denied.

Dated this 8th day of September, 2025.

9/8/2025 11:57:43 AM

Judge Robert T. Manicke

---

won at the Tax Court level, and the department still thought it was right and wanted to go on to the Supreme Court the department would still be required to pay a refund. If they failed to pay that refund within 60 days, then the interest rate the department would have to pay on the refund would go up by four percent").) *with id.* at 5:00 (statement of Rick Peterson ("If the taxpayer loses at that Tax Court level, * * * they can appeal to the Supreme Court and in subsection (3) * * * the interest running during that time would still be the lower rate of interest until the Supreme Court made a decision.").)